The Hon. Marsha J. Pechman

UNITED STATES DISTRICT COURT

WESTERN DISTRICT OF WASHINGTON

AT SEATTLE

| | |
|---|---|
| KENNETH MCGUIRE and DAVID WILCZYNSKI, On Behalf of Themselves and All Others Similarly Situated, | Case No. C07-800 MJP |
| Plaintiffs, | **CLASS ACTION** |
| vs. | **PLAINTIFFS' MOTION FOR CLASS CERTIFICATION** |
| DENDREON CORPORATION, et al., | |
| Defendants. | NOTE ON MOTION CALENDAR: March 17, 2010 |

*Plaintiffs' Motion for Class Certification*
*No. 2:07-cv-0800-MJP*
*Page 1 of 22*

1000947v1/010251

SUSMAN GODFREY L.L.P.
1201 Third Avenue, Suite 3800
Seattle, WA 98101-3000
Tel: (206) 516-3880; Fax: (206) 516-3883

# TABLE OF CONTENTS

TABLE OF AUTHORITIES .............................................................................. 3

I.     INTRODUCTION ..................................................................................... 5

II.    BACKGROUND ...................................................................................... 6

III.   ARGUMENT ........................................................................................... 8

       A.    Applicable Legal Standards ........................................................ 8

       B.    The Requirements of Rule 23(a) Are Satisfied in This Case. ..................... 9

             1.    The Members of the Class Are So Numerous That Joinder
                   Would Be Impracticable. ............................................... 9

             2.    There Are Questions of Law and Fact Common to the Class
                   and Subclass. ............................................................. 11

             3.    Plaintiff's Claims Are Typical of the Claims of the Class
                   and Subclass. ............................................................. 12

             4.    Plaintiffs and Their Counsel Will Adequately Represent the
                   Class and Subclass. ...................................................... 13

       C.    This Action Satisfies Rule 23(b)(3). ........................................... 14

             1.    Common Questions of Law and Fact Predominate and the
                   Market for Dendreon Stock Operated Efficiently. ..................... 15

             2.    A Class Action Is Superior to Other Available Methods for
                   the Fair and Efficient Adjudication of This Action. .................. 18

IV.    CONCLUSION ....................................................................................... 20

*Plaintiffs' Motion for Class Certification*
*No. 2:07-cv-0800-MJP*
*Page 2 of 22*

SUSMAN GODFREY L.L.P.
1201 Third Avenue, Suite 3800
Seattle, WA 98101-3000
Tel: (206) 516-3880; Fax: (206) 516-3883

1000947v1/010251

### TABLE OF AUTHORITIES

**CASES**

*Amchem Prods., Inc. v. Windsor*, 521 U.S. 591 (1997) ...................................................... 15

*Basic Inc. v. Levinson,* 485 U.S. 224  (1988) ...................................................................... 16

*Binder v. Gillespie*, 184 F.3d 1059 (9th Cir. 1999) ........................................................... 17

*Blackie v. Barrack*, 524 F.2d 891 (9th Cir. 1975) ................................................. 8, 9, 15, 19

*Cameron v. E.M. Adams & Co.*, 547 F.2d 473 (9th Cir. 1976) ......................................... 11

*Cammer v. Bloom*, 711 F. Supp. 1264 (D.N.J. 1989) ......................................................... 17

*Consol. Rail Corp. v. Town of Hyde Park*, 47 F.3d 473 (2d Cir. 1995) ............................ 11

*Ellis v. Costco Wholesale Corp.*, 240 F.R.D. 627 (N.D. Cal. 2007) .................................. 10

*Epstein v. MCA, Inc.*, 50 F.3d 644 (9th Cir. 1995) ............................................................. 15

*Esplin v. Hirschi*, 402 F.2d 94 (10th Cir. 1968) ................................................................... 9

*Fifth Moorings Condo., Inc. v. Shere*, 81 F.R.D. 712 (S.D. Fla. 1979) .............................. 19

*Hanlon v. Chrysler Corp.*, 150 F.3d 1011 (9th Cir. 1998) ........................ 11, 13, 14, 18, 19

*In re Alco Int'l Group, Inc., Sec. Litig.*, 158 F.R.D. 152 (S.D. Cal. 1994) ........................ 17

*In re Alstom SA Sec. Litig.*, 253 F.R.D. 266 (S.D.N.Y. 2008) ............................................ 17

*In re Blech Sec. Litig.*, 187 F.R.D. 97 (S.D.N.Y. 1999) ....................................................... 9

*In re Connetics Corp. Sec. Litig.*, 257 F.R.D. 572 (N.D. Cal. 2009) .................................... 8

*In re Cooper Cos. Inc. Sec. Litig.*, 254 F.R.D. 628 (C.D. Cal. 2009) ....... 8, 9, 13, 15, 17, 19

*In re Credit Suisse-AOL Sec. Litig.*, 253 F.R.D. 17 (D. Mass. 2008) ................................ 17

*In re Emulex Corp. Sec. Litig.*, 210 F.R.D. 717 (C.D. Cal. 2002) ..................................... 15

*In re First Alliance Mortg. Co.*, 471 F.3d 977 (9th Cir. 2006) ..................................... 11, 12

*In re First Capital Holdings Corp. Fin. Prods. Sec. Litig.*, No. MDL
    901, 1993 WL 144861 (C.D. Cal. Feb. 26, 1993) ................................................ 10, 15

*In re Folding Carton Antitrust Litig.*, 75 F.R.D. 727 (N.D. Ill. 1977)................................ 19

*In re LDK Solar Sec. Litig.*, 255 F.R.D. 519 (N.D. Cal. 2009)........................................... 17

*Plaintiffs' Motion for Class Certification*
*No. 2:07-cv-0800-MJP*
*Page 3 of 22*

SUSMAN GODFREY L.L.P.
1201 Third Avenue, Suite 3800
Seattle, WA  98101-3000
Tel:  (206) 516-3880; Fax: (206) 516-3883

1000947v1/010251

*In re Nature's Sunshine Prod. Inc. Sec. Litig.*, 251 F.R.D. 656 (D. Utah 2008) ................................................................................. 17

*In re Unioil Sec. Litig.*, 107 F.R.D. 615 (C.D. Cal. 1985) ............................... 10, 13, 16, 19

*In re Visa Check/MasterMoney Antitrust Litig.*, 280 F.3d 124 (2d Cir. 2001) ................................................................................. 19

*Lapin v. Goldman Sachs & Co.*, 254 F.R.D. 168 (S.D.N.Y. 2008) ................................... 17

*Moeller v. Taco Bell Corp.*, 220 F.R.D. 604 (N.D. Cal. 2004) ............................................ 8

*Nursing Home Pension Fund v. Oracle Corp.*, No. 01-0988, 2006 U.S. Dist. LEXIS 94470 (N.D. Cal. Dec. 20, 2006) ................................... 10

*Oscar Private Equity Invs. v. Allegiance Telecom, Inc.*, 487 F.3d 261 (5th Cir. 2007) ................................................................................. 17

*Schaefer v. Overland Express Family of Funds*, 169 F.R.D. 124 (S.D. Cal. 1996) ................................................................................. 13, 16

*Schneider v. Traweek*, No. 88-0905, 1990 U.S. Dist. LEXIS 15596 (C.D. Cal. Aug. 7, 1990) ................................................................................. 9

*Scholes v. Stone, McGuire & Benjamin*, 143 F.R.D. 181 (N.D. Ill. 1992) ....................... 19

*Schwartz v. Harp*, 108 F.R.D. 279 (C.D. Cal. 1985) ............................................ 10

*Stanton v. Boeing Co.*, 327 F.3d 938 (9th Cir. 2003) ................................... 13

*Zeidman v. Ray McDermott & Co., Inc.*, 651 F.2d 1030 (5th Cir. 1981) ........................... 10

**RULES**

Fed. R. Civ. P. 23 ................................................................. 8, 9, 11, 13, 14, 18, 19

**TREATISES**

1 Newberg on Class Actions § 3.05 (2d ed. 1985) ................................................ 11

7 Newberg on Class Actions § 22.65 (4th ed. 2009) ........................................ 18

*Plaintiffs' Motion for Class Certification*
*No. 2:07-cv-0800-MJP*
*Page 4 of 22*

SUSMAN GODFREY L.L.P.
1201 Third Avenue, Suite 3800
Seattle, WA 98101-3000
Tel: (206) 516-3880; Fax: (206) 516-3883

1000947v1/010251

## I. **INTRODUCTION**

Plaintiffs Kenneth McGuire and David Wilczysnki, on behalf of themselves and all others similarly situated, respectfully move this Court for an order, pursuant to Federal Rule of Civil Procedure 23, certifying a class (the "Class") consisting of

> All persons and entities who purchased the common stock of Dendreon Corporation between March 29, 2007 and May 8, 2007, both dates inclusive (excluding the defendants, the officers and directors of Dendreon, members of their immediate families, and the heirs, successors or assigns of any of the foregoing).

David Wilczynski, on behalf of himself and all others similarly situated, further moves this Court for an order certifying a subclass (the "Subclass") consisting of

> All persons and entities who purchased the common stock of Dendreon Corporation on April 2, 2007 (excluding the defendants, the officers and directors of Dendreon, members of their immediate families, and the heirs, successors or assigns of any of the foregoing).

Plaintiffs also seek an order appointing Kenneth McGuire ("McGuire") and David Wilczynski ("Wilczynski") as the Class representatives, appointing David Wilczynski as the Subclass representative, and appointing their counsel of record—Susman Godfrey L.L.P.— as Class counsel.

This is a protypical securities class action involving an alleged fraud committed by a large publicly traded company and its top officers. As discussed below, the four prerequisites of Rule 23(a)—numerosity, commonality, typicality, and adequacy—are readily satisfied in this case. Likewise, the requirements of Rule 23(b)(3) have been met because questions common to members of the Class and Subclass "predominate over any questions affecting only individual members," and proceeding as a class action "is superior to other available methods for fairly and efficiently adjudicating the controversy." Accordingly, it is respectfully submitted that plaintiffs' motion for class certification should be granted.

*Plaintiffs' Motion for Class Certification*
*No. 2:07-cv-0800-MJP*
*Page 5 of 22*

SUSMAN GODFREY L.L.P.
1201 Third Avenue, Suite 3800
Seattle, WA 98101-3000
Tel: (206) 516-3880; Fax: (206) 516-3883

1000947v1/010251

## II.    BACKGROUND

On October 4, 2007, this Court appointed McGuire as the lead plaintiff in this action. (Dkt. No. 40, at 9.)  On June 8, 2009, McGuire and Wilczysnki filed their Third Amended Complaint for Violation of the Federal Securities Laws ("TAC"), which is the operative complaint in this matter.  (Dkt. No. 118.)

The TAC asserts claims for relief against Dendreon Corporation ("Dendreon" or "the Company"); Mitchell Gold, Dendreon's President and Chief Executive Officer; and David Urdal, Dendreon's Senior Vice President and Chief Scientific Officer, arising under the Securities Exchange Act of 1934, 15 U.S.C. § 78a, *et seq.*, and related SEC rules.   In particular, the TAC alleges that defendants misrepresented the results of a United States Food and Drug Administration ("FDA") inspection of Dendreon's manufacturing facilities and that Gold engaged in insider trading when he sold Dendreon stock with full knowledge of the results of the inspection and before these results were publicly disclosed.  (TAC ¶¶ 2–16.)

Dendreon is a biotechnology company focused on the development and commercialization of therapies for cancer.  (TAC ¶ 2.)  Its most advanced product is Provenge, an immunotherapy for advanced prostate cancer with, according to some analysts, a one-billion dollar potential market.  (*Id.*)  Part of the federal approval process for Provenge involved an FDA inspection of Dendreon's manufacturing facilities, which the FDA conducted in mid-February 2007.  (*Id.* ¶ 5.)  Following that inspection, the FDA issued Dendreon an Inspectional Observations Report on Form 483 detailing multiple "significant objectionable conditions."  (*Id.*)   Until those "significant objectionable conditions" were resolved to the FDA's satisfaction, Dendreon could not obtain FDA approval of Provenge and, consequently, could not market Provenge.  (*Id.*)

On March 29, 2007, during a conference call with securities analysts and investors, one analyst asked Gold whether Dendreon's facilities "passed muster."  (*Id.* ¶ 7.)  As Gold

*Plaintiffs' Motion for Class Certification*
*No. 2:07-cv-0800-MJP*
*Page 6 of 22*

SUSMAN GODFREY L.L.P.
1201 Third Avenue, Suite 3800
Seattle, WA  98101-3000
Tel:  (206) 516-3880; Fax: (206) 516-3883

1000947v1/010251

began to respond, Urdal abruptly interrupted and stated that "we hosted a good inspection." (*Id.* ¶¶ 7, 71.)  The next day, Dendreon common stock experienced heavy trading volume, and its price increased 343%.  (*Id.* ¶ 9.)  Four days later, in his first sale of Dendreon stock ever, Gold sold 24% of his holdings for approximately $2.7 million.  (*Id.* ¶ 10.)

On May 8, 2007, the FDA rejected Dendreon's application to approve Provenge, citing the inspection issues as one of the two reasons for its decision.  (*Id.* ¶ 11.)  The market price of Dendreon's stock immediately crashed, dropping from $17.74 to $6.33 per share on the day the news of the rejection was disseminated to the investing public.  (*Id.*)  On May 10, 2007, during a conference call with securities analysts and investors, defendants acknowledged for the first time that the Form 483 had been issued in February, identifying multiple "significant objectionable conditions," and that the FDA had cited those same issues in the Complete Response Letter.  (*Id.* ¶ 12.)

The Class Period begins on March 29, 2007, the date of the conference call in which defendants misrepresented the results of the FDA inspection and runs through May 8, 2007, the day just before the disclosure of the FDA's rejection of Dendreon's application to approve Provenge.  Both McGuire and Wilczysnki purchased shares of Dendreon common stock during the Class Period.  (*Id.* ¶ 21.)  Plaintiffs contend that defendants' acts violated federal securities laws and that they and others who purchased Dendreon stock during the Class Period were injured and suffered damages as a result of these violations.  Plaintiffs also allege a Subclass consisting of those who purchased Dendreon stock on April 2, 2007— the date defendant Gold sold 202,090 shares while in the possession of material, adverse, non-public information about Dendreon.  (*Id.* ¶ 80.)  Wilczynski purchased 5,200 shares of Dendreon stock on that date.  (*Id.* ¶ 125.)

*Plaintiffs' Motion for Class Certification*
*No. 2:07-cv-0800-MJP*
*Page 7 of 22*

SUSMAN GODFREY L.L.P.
1201 Third Avenue, Suite 3800
Seattle, WA 98101-3000
Tel: (206) 516-3880; Fax: (206) 516-3883

1000947v1/010251

III.    **ARGUMENT**

A.    **Applicable Legal Standards**

In order for a class action to be certified, plaintiffs must show that they meet the requirements of Federal Rule of Civil Procedure 23(a) and (b). Because the determination whether to certify a class is generally made at an early stage in the proceedings, the substantive allegations of the complaint are accepted as true for purposes of the certification motion. *In re Cooper Cos. Inc. Sec. Litig.*, 254 F.R.D. 628, 633 (C.D. Cal. 2009) (*citing Moeller v. Taco Bell Corp.*, 220 F.R.D. 604, 607–08 (N.D. Cal. 2004), and *Blackie v. Barrack*, 524 F.2d 891, 901 (9th Cir. 1975)). In ruling on a motion for class certification, the court should delve into the merits of the case only to the extent necessary to determine whether the requirements of Rule 23(a) and (b) are satisfied, not whether plaintiffs will ultimately be able to establish their claims. *In re Connetics Corp. Sec. Litig.*, 257 F.R.D. 572, 575–76 (N.D. Cal. 2009).

> The relevant factors under Rule 23(a) are:
>
> (1) the class is so numerous that joinder of all members is impracticable;
>
> (2) there are questions of law or fact common to the class;
>
> (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class; and
>
> (4) the representative parties will fairly and adequately protect the interests of the class.

FED. R. CIV. P. 23(a).

In addition, the case must satisfy one of the factors under Rule 23(b): (1) there is a risk of inconsistent or unfair adjudication if parties proceed with separate actions; (2) the defendant acted or refused to act on grounds generally applicable to the class, making injunctive or declaratory relief appropriate to the class as a whole; or (3) common questions of law or fact predominate and class resolution is superior to other available methods for fair and efficient adjudication of the controversy. FED. R. CIV. P. 23(b). In this case, certification is sought under Rule 23(b)(3).

*Plaintiffs' Motion for Class Certification*
*No. 2:07-cv-0800-MJP*
*Page 8 of 22*

SUSMAN GODFREY L.L.P.
1201 Third Avenue, Suite 3800
Seattle, WA 98101-3000
Tel: (206) 516-3880; Fax: (206) 516-3883

1000947v1/010251

Federal and state courts have consistently endorsed the use of class action procedures to resolve securities claims. *Schneider v. Traweek*, No. 88-0905, 1990 U.S. Dist. LEXIS 15596, at *16 (C.D. Cal. Aug. 7, 1990) ("The law in the Ninth Circuit is very well established that the requirements of Rule 23 should be liberally construed in favor of class action cases brought under the federal securities laws."). This is so "because of the substantial role that the deterrent effect of class actions plays in accomplishing the objectives of the securities laws," *Blackie*, 524 F.2d at 903, and "because class actions are particularly effective in serving as private policing weapons against corporate wrongdoing." *Cooper*, 254 F.R.D. at 642. Any doubts should be resolved in favor of certification, particularly since a class certification order is conditional and subject to reassessment. *See Esplin v. Hirschi*, 402 F.2d 94, 99 (10th Cir. 1968).

Here, there should be no doubt as to the propriety of class treatment. As demonstrated below, both the Class and Subclass satisfy the Rule 23(a) elements of numerosity, commonality, typicality, and adequacy of representation, and additionally both satisfy the Rule 23(b)(3) predominance and superiority requirements.[1]

## B.    The Requirements of Rule 23(a) Are Satisfied in This Case.

### 1.    *The Members of the Class Are So Numerous That Joinder Would Be Impracticable.*

To satisfy numerosity, Rule 23(a)(1) requires that the proposed class be "so numerous that joinder of all members is impracticable." FED. R. CIV. P. 23(a)(1). "Impracticability means difficulty or inconvenience of joinder; the rule does not require impossibility of joinder." *In re Blech Sec. Litig.*, 187 F.R.D. 97, 103 (S.D.N.Y. 1999).

"[N]umerosity is presumed where the plaintiff class contains forty or more members." *Cooper*, 254 F.R.D. at 634. However, a plaintiff need not allege the exact number or identity of class members to satisfy the numerosity requirement. *See Ellis v.*

---

[1] Under applicable law, subclasses are generally certifiable without establishing numerosity.

*Plaintiffs' Motion for Class Certification*
*No. 2:07-cv-0800-MJP*
*Page 9 of 22*

SUSMAN GODFREY L.L.P.
1201 Third Avenue, Suite 3800
Seattle, WA 98101-3000
Tel: (206) 516-3880; Fax: (206) 516-3883

1000947v1/010251

*Costco Wholesale Corp.*, 240 F.R.D. 627, 637 (N.D. Cal. 2007). The requirement can be satisfied if common sense indicates that the class is large. *Schwartz v. Harp*, 108 F.R.D. 279, 281–82 (C.D. Cal. 1985). Indeed, courts commonly conclude that numerosity is satisfied in securities cases involving publicly traded stock if the number of shares exchanged during the class period is large. *See Nursing Home Pension Fund v. Oracle Corp.*, No. 01-0988, 2006 U.S. Dist. LEXIS 94470, at *9 (N.D. Cal. Dec. 20, 2006) (finding that class size numbered in the thousands based on daily trading volume "as high as 120 million shares during the Class Period"); *In re First Capital Holdings Corp. Fin. Prods. Sec. Litig.*, No. MDL 901, 1993 WL 144861, at *5 (C.D. Cal. Feb. 26, 1993) (finding it "reasonable to believe[] that there are several thousand members of the proposed class" where "approximately 46 million shares . . . were outstanding"); *In re Unioil Sec. Litig.*, 107 F.R.D. 615, 618 (C.D. Cal. 1985) (finding numerosity based on estimate that "several million shares of Unioil common stock were purchased during the class period"). In addition, courts commonly assume that persons trading in stocks on national exchanges or market systems are geographically dispersed, making joinder infeasible. *See id.* As a result, "numerosity is generally presumed in class action suits involving nationally traded securities." *Nursing Home Pension Fund*, 2006 U.S. Dist. LEXIS 94470, at *9 (citing *Zeidman v. Ray McDermott & Co., Inc.*, 651 F.2d 1030, 1038 (5th Cir. 1981)).

Of course, defendants have admitted that Dendreon's stock is traded on the NASDAQ at all times during the Class Period. (Defs.' Answer to TAC ¶ 32.) During the Class Period, Dendreon had a reported trading volume of more than 870 million shares with a dollar trading volume exceeding $15 billion. (Expert Report of Bjorn I. Steinholt, CFA ("Steinholt Report") ¶ 14 (attached as Exhibit 1 to the Declaration of Marc M. Seltzer).) Dendreon had approximately 83 million shares outstanding and a weekly trading volume ranging from 95 million to more than 327 million shares. (*Id.* ¶ 15.) Moreover, at least nine securities research firms covered Dendreon during that time, indicating enough demand for

*Plaintiffs' Motion for Class Certification*
*No. 2:07-cv-0800-MJP*
*Page 10 of 22*

S U S M A N   G O D F R E Y   L.L.P.
1201 Third Avenue, Suite 3800
Seattle, WA 98101-3000
Tel: (206) 516-3880; Fax: (206) 516-3883

1000947v1/010251

research from investors to provide an economic justification for covering the Company.  (*Id.* ¶¶ 16–17.*)  Accordingly, a reasonable estimate of the size of the Class would be in the thousands, TAC ¶ 32, and therefore plaintiffs easily satisfy Rule 23(a)(1)'s numerosity requirement.  *See, e.g., Consol. Rail Corp. v. Town of Hyde Park*, 47 F.3d 473, 483 (2d Cir. 1995) (stating that "numerosity is presumed at a level of 40 members") (citing 1 NEWBERG ON CLASS ACTIONS § 3.05 (2d ed. 1985)).[2]

### 2.    There Are Questions of Law and Fact Common to the Class and Subclass.

The commonality requirement of Rule 23(a)(2) is satisfied where there are "questions of law or fact common to the class."  FED. R. CIV. P. 32(a)(2).    A common nucleus of operative facts usually is enough to satisfy the commonality requirement, and the Ninth Circuit construes the commonality requirement "permissively" and does not require all questions of fact and law to be common.  *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1019 (9th Cir. 1998).  Instead, a single common question is sufficient to satisfy the commonality requirement.   *In re First Alliance Mortg. Co.*, 471 F.3d 977, 990–91 (9th Cir. 2006) (affirming class treatment in fraud case, notwithstanding non-identical misrepresentations, where sales agents used a "standardized protocol").  Any defense that might be asserted does not destroy commonality.  *See, e.g.*, *Cameron v. E.M. Adams & Co.*, 547 F.2d 473, 478 (9th Cir. 1976) (individual statute of limitations defenses did not defeat predominance of common issues).

The TAC sets forth a multitude of common questions of law and fact affecting liability.  The common questions include:

(a)    Whether the federal securities laws were violated by defendants' acts as alleged [in the TAC];

---

[2]  Although numerosity is not a requirement for certification of a subclass, common sense also dictates that hundreds—if not thousands—of persons purchased Dendreon common stock on April 2, 2009.  The daily trading volume on April 2, 2007 was 43,741,541 shares—more than half of the shares outstanding.  (Steinholt Decl., Ex. D at p. 47).

*Plaintiffs' Motion for Class Certification*
*No. 2:07-cv-0800-MJP*
*Page 11 of 22*

SUSMAN GODFREY L.L.P.
1201 Third Avenue, Suite 3800
Seattle, WA  98101-3000
Tel:  (206) 516-3880; Fax: (206) 516-3883

1000947v1/010251

(b) Whether defendants made materially false and misleading statements during the Class Period;

(c) Whether defendants acted knowingly or recklessly in concealing material information, making materially false and misleading statements, and issuing materially false and misleading releases, reports and filings during the Class Period;

(d) Whether Gold engaged in insider trading by failing to disclose material non-public information when transacting in Dendreon stock on April 2, 2007;

(e) Whether the market prices of Dendreon's securities during the Class Period were artificially inflated because of defendants' conduct complained of herein; and

(f) Whether the members of the Class and Subclass have sustained damages and, if so, what is the proper measure of damages.

(TAC ¶ 33.)  Because the claims of each member of the Class and Subclass will turn on the same questions of fact and law, the commonality requirement of Rule 23(a)(2) is satisfied.  *See In re First Alliance Mortg. Co.*, 471 F.3d at 990–91.  These issues regarding the lawfulness of defendants' conduct are not unique to any members of the Class or Subclass.  *See id.*

### 3.    *Plaintiff's Claims Are Typical of the Claims of the Class and Subclass.*

Rule 23(a)(3) requires that the claims of the representative plaintiff must be "typical" of the claims of the class.  This Court previously addressed issues of typicality in its order designating lead plaintiff and lead counsel:

"Typicality" in the class action context is measured by whether the applicant's claims arise from the same event or course of conduct which gave rise to the claims of the class members, and are founded on the same legal theory.

(Dkt. No. 40, at 6.)  This Court noted that "[McGuire's] alleged injuries stem from the same course of conduct complained of by the other plaintiffs and his causes of action are founded on similar legal theories[.]"  (*Id.* at 7.)  This Court found "that Plaintiff McGuire's interests in prosecuting this litigation are identical to those of the remainder of the class; namely, recovering for Defendants' allegedly fraudulent and misleading statements and omissions concerning the status of the development and manufacture of Provenge."  (*Id.*)  The Court

*Plaintiffs' Motion for Class Certification*
*No. 2:07-cv-0800-MJP*
*Page 12 of 22*

SUSMAN GODFREY L.L.P.
1201 Third Avenue, Suite 3800
Seattle, WA  98101-3000
Tel:  (206) 516-3880; Fax: (206) 516-3883

1000947v1/010251

therefore found "that the FRCP 23(a)(3) typicality requirements have been met." (*Id.*) The Court also rejected a later challenge to McGuire's adequacy and typicality. (Dkt. No. 74).

Wilczynski similarly satisfies Rule 23(a)(3)'s typicality requirement with respect to the Class: his claims arise out of the same events, course of conduct, and legal theories that give rise to the claims of all members of the Class and are typical of the claims of absent Class members. His claims are also typical of the claims of the absent Subclass members, all of whom purchased Dendreon stock on the same day that Gold engaged in insider trading. *See generally* Declaration of David Wilczynski ("Wilczynski Decl.").

Thus, both plaintiffs have an interest in prevailing on the same legal claims as all other members of the Class and Subclass. The Court's prior rulings remain sound, and are independently supported by the record evidence, and should continue to govern here. The typicality requirement of Rule 23(a)(3) is satisfied in this case.

### 4. Plaintiffs and Their Counsel Will Adequately Represent the Class and Subclass.

The fourth and final requirement of Rule 23(a) is that "the representative parties will fairly and adequately protect the interests of the class." FED. R. CIV. P. 23(a)(4). Rule 23(a)(4)'s adequacy requirement entails two inquiries: (1) whether the named plaintiffs and their counsel have any conflicts of interest with other class members; and (2) whether the named plaintiffs and their counsel will prosecute the action vigorously on behalf of the class. *See Hanlon*, 150 F.3d at 1020; *Stanton v. Boeing Co.*, 327 F.3d 938, 957 (9th Cir. 2003). In the securities class action context, district courts in the Ninth Circuit have formulated the issue of adequacy as determining whether the "representative party's attorney [would] be qualified" and whether "the named plaintiffs' interests [would] not be antagonistic to the remainder of the class." *Cooper*, 254 F.R.D. at 636 (citing *Schaefer v. Overland Express Family of Funds*, 169 F.R.D. 124, 130 (S.D. Cal. 1996)); *see also Unioil*, 107 F.R.D. at 622 ("Although a court may consider potential conflicts of interest, the Ninth Circuit has

*Plaintiffs' Motion for Class Certification*
*No. 2:07-cv-0800-MJP*
*Page 13 of 22*

SUSMAN GODFREY L.L.P.
1201 Third Avenue, Suite 3800
Seattle, WA 98101-3000
Tel: (206) 516-3880; Fax: (206) 516-3883

1000947v1/010251

observed that courts generally decline to consider conflicts at the outset, unless the conflict is apparent and at the very heart of the suit.").

Here, there exist no actual nor potential conflicts of interest. Both Wilczysnski and McGuire have a strong interest in establishing defendants' liability, and neither possesses interests antagonistic to the Class or the Subclass. (McGuire Decl. ¶ 6; Wilczysnki Decl. ¶ 5.)

Further, as the Court knows from proceedings that have already taken place in this action, plaintiffs and their counsel have vigorously pursued the claims asserted on behalf of the Class and Subclass and will continue to do so. Both plaintiffs incurred substantial losses and have been actively involved in overseeing the litigation. Indeed, reflective of their commitment, plaintiffs opposed defendants' efforts to restrict McGuire's and Wilczynski's access to certain documents. Moreover, plaintiffs have selected and are represented by experienced counsel with many years of experience in conducting complex class actions and securities litigation. (Seltzer Decl., Ex. 2.) This court has already found that lead counsel—Marc M. Seltzer and the law firm of Susman Godfrey L.L.P.—"possess the requisite experience in the area of securities litigation and the resources to adequately discharge their responsibilities in this role." (Dkt. No. 40, at 9.)

Rule 23(a)(4) is thus fully satisfied.

### C.    This Action Satisfies Rule 23(b)(3).

Once the four prerequisites of Rule 23(a) are satisfied, as in this case, the proposed class must also satisfy at least one subpart of Rule 23(b). Certification under Rule 23(b)(3) is requested here. Rule 23(b)(3) requires: (1) that the Court find that common questions of law or fact predominate over individual questions; and (2) that the class action provides a superior method for adjudicating the controversy. *See* FED. R. CIV. P. 23(b)(3); *Hanlon*, 150 F.3d at 1022.

*Plaintiffs' Motion for Class Certification*
*No. 2:07-cv-0800-MJP*
*Page 14 of 22*

SUSMAN GODFREY L.L.P.
1201 Third Avenue, Suite 3800
Seattle, WA 98101-3000
Tel: (206) 516-3880; Fax: (206) 516-3883

1000947v1/010251

### 1.    *Common Questions of Law and Fact Predominate and the Market for Dendreon Stock Operated Efficiently.*

The Supreme Court has noted that "[p]redominance is a test readily met in certain cases alleging . . . securities fraud." *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 625 (1997).  "As the Ninth Circuit has so aptly stated, securities fraud cases fit Rule 23 'like a glove.'"  *Cooper*, 254 F.R.D. at 632 (quoting *Epstein v. MCA, Inc.*, 50 F.3d 644, 668 (9th Cir. 1995), *rev'd on other grounds*, 516 U.S. 367 (1996)); *First Capital,* 1993 WL 144861, at *6 ("The Ninth Circuit has repeatedly found that common issues predominate in federal securities actions where the proposed class members have all been injured by the same alleged course of conduct.").  In this case, as in the vast majority of securities cases, each element of proof is entitled to class treatment.

In assessing whether common questions predominate, the Court's inquiry should be directed primarily toward the issue of liability.  *See Blackie*, 524 F.2d at 902.  As one district court has put it,

> [T]he critical questions of what Defendants said, what they knew, what they may have withheld, and with what intent they acted, are central to all class members' claims.  Without favorable findings on these critical questions related to liability, no member of the class can succeed.  Issues such as certain members' damages, timing of sales and purchases, or standing to file suit, do not have the same primacy.

*Cooper*, 254 F.R.D. at 640.

Defendants' liability here depends on whether their statements and omissions were materially misleading to securities purchasers and whether defendants knew or recklessly disregarded contrary facts or otherwise acted fraudulently.  Those issues, common to all members of the Class and Subclass predominate over any individual issues that theoretically might exist.  *See In re Emulex Corp. Sec. Litig.*, 210 F.R.D. 717, 721 (C.D. Cal. 2002) ("The predominant questions of law or fact at issue in this case are the alleged misrepresentation Defendants made during the Class Period and are common to the class.").  Here it is difficult to discern any liability issues that are <u>not</u> common to all members of the Class and Subclass.

*Plaintiffs' Motion for Class Certification*
*No. 2:07-cv-0800-MJP*
*Page 15 of 22*

SUSMAN GODFREY L.L.P.
1201 Third Avenue, Suite 3800
Seattle, WA  98101-3000
Tel:  (206) 516-3880; Fax: (206) 516-3883

1000947v1/010251

Indeed, as in virtually all securities cases, the only potential individual fact questions in this case involve reliance and damages. Even if such issues exist, courts normally regard them as not being predominant. *See, e.g., Schaefer*, 169 F.R.D. at 131 ("[T]he presence of different methods of reliance by different members of the class does not result in a conclusion that individual issues predominate over the common questions."); *Unioil*, 107 F.R.D. at 622 (holding that where "a common nucleus of misrepresentations, material omissions and market manipulations [exists], the common questions predominate over any differences between individual class members with respect to damages, causation or reliance").

Moreover, there are no individual issues of reliance. The seminal case of *Basic Inc. v. Levinson,* 485 U.S. 224 (1988), established that, where there is an efficient market for a security, the market price is presumed to reflect the market's absorption and evaluation of relevant public information. *Id.* at 247. "An investor who buys or sells stock at the price set by the market does so in reliance on the integrity of that price." *Id.* If public information is infected by material misrepresentations or omissions, an investor's reliance on them is presumed because the market price reflects such information. *Id.*; *Desai*, 573 F.3d at 942.

In other words, although varying individual decisional processes may have caused each class member to trade in Dendreon stock, the bedrock principle established by *Basic* entitles all participants to rely on the fairness of an efficient market and, therefore, to presume that transaction prices are not skewed by materially misleading information. As the Supreme Court noted, "'it is hard to imagine that there ever is a buyer or seller who does not rely on market integrity. Who would knowingly roll the dice in a crooked crap game?'" *Basic*, 486 U.S. at 246–47. Thus, "the mere fact it is unlikely that each particular investor relied [directly] on the alleged misleading information is irrelevant" and "will not defeat

*Plaintiffs' Motion for Class Certification*
*No. 2:07-cv-0800-MJP*
*Page 16 of 22*

SUSMAN GODFREY L.L.P.
1201 Third Avenue, Suite 3800
Seattle, WA 98101-3000
Tel: (206) 516-3880; Fax: (206) 516-3883

1000947v1/010251

1    class certification." *In re Alco Int'l Group, Inc., Sec. Litig.*, 158 F.R.D. 152, 154 (S.D. Cal.

2    1994).[3]

3        Here substantive allegations of the TAC (which are to be taken as true, *Cooper*, 254

4    F.R.D. at 633), as well as the Steinholt Report, establish that all the hallmarks of market

5    efficiency are present.  (TAC ¶¶ 100–101.)   To ascertain whether a market is efficient, the

6    Ninth Circuit has recognized the five-factor test set forth in *Cammer v. Bloom*, 711 F. Supp.

7    1264, 1286–87 (D.N.J. 1989):

8
9        The *Cammer* factors are designed to help make the central determination of
         efficiency in a particular market.  They address five characteristics of the
10       company and its stock: first, whether the stock trades at a high weekly
         volume; second, whether securities analysts follow and report on the stock;
11       third, whether the stock has market makers and arbitrageurs; fourth, whether
         the company is eligible to file SEC registration form S-3, as opposed to form
12       S-1 or S-2; and fifth, whether there are "empirical facts showing a cause and
         effect relationship between unexpected corporate events or financial releases
13       and an immediate response in the stock price."

14   *Binder v. Gillespie*, 184 F.3d 1059, 1065 (9th Cir. 1999).

15       As to the first factor, the weekly trading volume of Dendreon stock, in the range of

16   95 million to 327 million shares during the Class Period, is very high relative to the

17

18

19       [3] Defendants may attempt to make a "loss causation" argument that relies on *Oscar
20   Private Equity Invs. v. Allegiance Telecom, Inc.*, 487 F.3d 261 (5th Cir. 2007), in opposing
     plaintiffs' class certification motion.  However, the courts in this Circuit—and every other
21   Circuit except the Fifth Circuit—have rejected *Oscar*'s novel and flawed holding that loss
     causation is an issue to be decided at the class certification stage.  *In re LDK Solar Sec.
22   Litig.*, 255 F.R.D. 519, 530 (N.D. Cal. 2009) ("*Oscar* placed the Fifth Circuit in a
     minority—indeed, apparently solitary—stance among the circuits; it is in no small amount
23   of tension with the Supreme Court's decision in *Basic v. Levinson*; and although the Ninth
     Circuit has yet to address the issue specifically in the context of class certification, this
24   circuit's precedent strongly suggests it would reject such a rule."); *In re Micron Techs., Inc.
     Sec. Litig.*, 247 F.R.D. 627, 634 (D. Idaho 2007) ("*Oscar* has not been considered or adopted
25   by the Ninth Circuit.  It is unlikely that it would be adopted in this Circuit because it misreads
     *Basic*."); *Cooper*, 254 F.R.D. at 641; *In re Credit Suisse-AOL Sec. Litig.*, 253
26   F.R.D. 17, 30 n.16 (D. Mass. 2008); *In re Nature's Sunshine Prod. Inc. Sec. Litig.*, 251
     F.R.D. 656, 665 (D. Utah 2008); *Lapin v. Goldman Sachs & Co.*, 254 F.R.D. 168, 184–186
27   (S.D.N.Y. 2008); *In re Alstom SA Sec. Litig.*, 253 F.R.D. 266, 280 (S.D.N.Y. 2008)
     ("Defendants have not established how Loss Causation is related to any necessary element
28   of Rule 23.").

*Plaintiffs' Motion for Class Certification*     SUSMAN GODFREY L.L.P.
*No. 2:07-cv-0800-MJP*                            1201 Third Avenue, Suite 3800
*Page 17 of 22*                                  Seattle, WA  98101-3000
                                                 Tel:  (206) 516-3880; Fax: (206) 516-3883

approximately 83 million shares outstanding. (Steinholt Report ¶ 15.) As to the second factor, no fewer than nine securities research firms specifically covered Dendreon. (*Id.* ¶ 16.) As to the third factor, during the Class Period there were sixty-four market makers and a substantial volume of arbitrage activity, as evidenced by short sale positions reaching levels of more than half of the shares outstanding. (*Id.* ¶¶ 18–19.) As to the fourth factor, Dendreon far exceeded the requirements for eligibility to file SEC Form S-3, and in fact did so multiple times during the Class Period. (*Id.* ¶ 22.) As to the fifth factor, analysis of movements in Dendreon's stock price reveals that it reacted quickly to new, material information. (*Id.* ¶¶ 25–32.) As Steinholt explains in his expert report, the market for Dendreon stock is efficient. Therefore, the fraud-on-the-market presumption applies and individual reliance issues are unimportant. Accordingly, the common questions of law and fact predominate over any individual questions.

On the issue of damages, it is axiomatic that while damages questions are inherently individual, damages can normally be established in summary proceedings, so the presence of individual damage issues will not defeat certification. *See generally* 7 NEWBERG ON CLASS ACTIONS § 22.65 (4th ed. 2009) ("The need for individual damages calculations does not diminish the appropriateness of class action certification when common questions as to liability predominate.").

### 2. *A Class Action Is Superior to Other Available Methods for the Fair and Efficient Adjudication of This Action.*

This case also satisfies the superiority requirement of Rule 23(b)(3), which mandates that the class action be "superior to other available methods for fairly and efficiently adjudicating the controversy." FED. R. CIV. P. 23(b)(3). "The superiority inquiry under Rule 23(b)(3) requires determination of whether the objectives of the particular class action procedure will be achieved in the particular case." *Hanlon*, 150 F.3d at 1023. Superiority

*Plaintiffs' Motion for Class Certification*
*No. 2:07-cv-0800-MJP*
*Page 18 of 22*

SUSMAN GODFREY L.L.P.
1201 Third Avenue, Suite 3800
Seattle, WA 98101-3000
Tel: (206) 516-3880; Fax: (206) 516-3883

1000947v1/010251

exists where "the alternative methods of resolution are individual claims for a small amount of consequential damages" and "litigation costs would dwarf potential recovery." *Id.*

The class action has long been recognized as a superior method for resolving securities fraud cases because it provides the fairest and most efficient adjudication. *Blackie*, 524 F.2d at 903 ("The availability of the class action to redress such frauds has been consistently upheld . . . ."); *Cooper*, 254 F.R.D. at 641 ("[D]istrict courts have consistently recognized the common liability issues involved in securities fraud cases are ideally suited for resolution by way of a class action."); *Unioil*, 107 F.R.D. at 622.

Here, a "fair examination of alternatives can only result in the apodictic conclusion that a class action is the clearly preferred procedure in this case," because (1) damages may be relatively small for many Class members, making individual lawsuits impractical for them, and (2) the Class size is so large that individual lawsuits would heavily burden the courts. *Hanlon*, 150 F.3d at 1023; *see also* TAC ¶ 32. Requiring each of the thousands of Class members to bring individual suits would be cost-prohibitive and would consume extraordinary judicial resources. *See Scholes v. Stone, McGuire & Benjamin*, 143 F.R.D. 181, 189 (N.D. Ill. 1992) ("What would be unmanageable is the institution of numerous individual lawsuits."); *In re Visa Check/MasterMoney Antitrust Litig.*, 280 F.3d 124, 146 (2d Cir. 2001) ("While both the district court and this Court have acknowledged that difficulties in managing this large class action may arise, these problems pale in comparison to the burden on the courts that would result from trying the cases individually.").

Additionally, certifying the proposed Class and Subclass will "'achieve economies of time, effort, and expense, and promote uniformity of decision as to persons similarly situated.'" *Fifth Moorings Condo., Inc. v. Shere*, 81 F.R.D. 712, 719 (S.D. Fla. 1979) (quoting FED. R. CIV. P. 23, Advisory Committee Notes). As the court explained in *In re Folding Carton Antitrust Litigation*, 75 F.R.D. 727 (N.D. Ill. 1977):

SUSMAN GODFREY L.L.P.
1201 Third Avenue, Suite 3800
Seattle, WA 98101-3000
Tel: (206) 516-3880; Fax: (206) 516-3883

We are further of the opinion that the alternative methods of adjudication inevitably involve duplicative, expensive, and time consuming suits without any countervailing benefits. Conversely, the class action embodies an efficient and fair balance of the interests of the plaintiffs, the class members, and the defendants, all of whom will have their claims and the claims against them adjudicated in one lawsuit. While such litigation presents some problems to counsel and the court, these burdens are not nearly as onerous to the judicial system as a series of extended suits against the defendants.

The public at large likewise will benefit from a class action and expeditious adjudication of the issues involved, since class actions reinforce the regulatory scheme by providing an additional deterrent beyond that afforded either by public enforcement or by single-party private enforcement.

*Id.* at 733 (citations and quotations omitted). Because class treatment would be more economical, efficient, and fair than other forms of adjudicating the controversy, this case satisfies the superiority requirement.

## IV.    **CONCLUSION**

For the reasons set forth herein and the facts set forth in the accompanying declarations, plaintiffs McGuire and Wilczynski respectfully submit that the Court should enter an order certifying this action as a class action, appointing Kenneth McGuire and David Wilczynski as the Class representatives, appointing David Wilczysnki as the Subclass representative, and appointing Susman Godfrey L.L.P. as Class and Subclass counsel.


Dated: January 14, 2010.              Respectfully submitted,


                                      By:    /s/ Marc M. Seltzer
                                      Marc M. Seltzer (admitted *pro hac vice*)
                                      Ryan C. Kirkpatrick (admitted *pro hac vice*)
                                      SUSMAN GODFREY L.L.P.
                                      1901 Avenue of the Stars, Suite 950
                                      Los Angeles, CA  90067-6029
                                      E-mail:  mseltzer@susmangodfrey.com
                                      E-mail:  rkirkpatrick@susmangodfrey.com
                                      Tel:  (310) 789-3100
                                      Fax:  (310) 789-3150

*Plaintiffs' Motion for Class Certification*
*No. 2:07-cv-0800-MJP*
*Page 20 of 22*

SUSMAN GODFREY L.L.P.
1201 Third Avenue, Suite 3800
Seattle, WA  98101-3000
Tel:  (206) 516-3880; Fax: (206) 516-3883

1000947v1/010251

Daniel J. Shih (WSBA #37999)
SUSMAN GODFREY L.L.P.
1201 Third Avenue, Suite 3800
Seattle, WA  98101-3000
E-mail:  dshih@susmangodfrey.com
Tel:  (206) 516-3880
Fax:  (206) 516-3883

*Counsel for Plaintiffs*

*Plaintiffs' Motion for Class Certification*
*No. 2:07-cv-0800-MJP*
*Page 21 of 22*

SUSMAN GODFREY L.L.P.
1201 Third Avenue, Suite 3800
Seattle, WA  98101-3000
Tel:  (206) 516-3880; Fax: (206) 516-3883

1000947v1/010251

1

2

## CERTIFICATE OF SERVICE

I hereby certify that on January 14, 2010, I electronically filed the foregoing *Plaintiffs' Motion for Class Certification* with the Clerk of the Court using the CM/ECF system, which will send notification of such filing to all counsel of record.

By    /s/ Marc M. Seltzer
Marc M. Seltzer

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

*Plaintiffs' Motion for Class Certification*
*No. 2:07-cv-0800-MJP*
*Page 22 of 22*

S U S M A N   G O D F R E Y   L.L.P.
1201 Third Avenue, Suite 3800
Seattle, WA  98101-3000
Tel:  (206) 516-3880; Fax: (206) 516-3883

1000947v1/010251