The Hon. Marsha J. Pechman

# UNITED STATES DISTRICT COURT
# WESTERN DISTRICT OF WASHINGTON
# AT SEATTLE

| | |
|---|---|
| KENNETH MCGUIRE and DAVID WILCZYNSKI, On Behalf of Themselves and All Others Similarly Situated,<br><br>Plaintiffs,<br><br>vs.<br><br>DENDREON CORPORATION, et al.,<br><br>Defendants. | Case No. C07-800 MJP<br><br>**CLASS ACTION**<br><br>**PLAINTIFFS' REPLY IN SUPPORT OF PLAINTIFFS' MOTION FOR CLASS CERTIFICATION**<br><br>NOTE ON MOTION CALENDAR:<br>March 17, 2010 |

*Plaintiffs' Reply in Support of Plaintiffs'*
*Motion for Class Certification*
*No. 2:07-cv-0800-MJP*

SUSMAN GODFREY L.L.P.
1201 Third Avenue, Suite 3800
Seattle, WA 98101-3000
Tel: (206) 516-3880; Fax: (206) 516-3883

1020111v1/010251

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ................................................................................................... II

I.   BACKGROUND ON DAVID WILCZYNSKI ............................................................. 1

II.  ARGUMENT ON REPLY ............................................................................................. 2

    A.   Defendants Fail to Establish That Unique Defenses Apply to
         Mr. Wilczynski............................................................................................ 2

    B.   Mr. Wilczynski Satisfies the Adequacy Requirement. .................................... 6

    C.   In-and-Out Traders Are Properly Part of the Class........................................ 9

III. CONCLUSION ............................................................................................................ 12

*Plaintiffs' Reply in Support of Plaintiffs'*       SUSMAN GODFREY L.L.P.
*Motion for Class Certification*      1201 Third Avenue, Suite 3800
*No. 2:07-cv-0800-MJP*      Seattle, WA 98101-3000
*Page i*      Tel: (206) 516-3880; Fax: (206) 516-3883

1020111v1/010251

# TABLE OF AUTHORITIES

**Cases**

*In re Am. Italian Pasta Co. Secs. Litig.*,
  No. 05-0725, 2007 WL 927745 (W.D. Mo. Mar. 26, 2007) ............................................ 12

*In re BearingPoint, Inc. Sec. Litigation*,
  232 F.R.D. 534 (E.D. Va. 2006) ................................................................................ 11, 12

*Blackie v. Barrack*,
  524 F.2d 891 (9th Cir. 1975) ................................................................................. 3, 10, 11

*In re Cigna Corp. Securities Litigation*,
  459 F. Supp. 2d 338 (E.D. Pa. 2006) ............................................................................... 11

*In re Cooper Companies Inc. Securities Litigation*,
  254 F.R.D. 628 (C.D. Cal. 2009) ................................................................................ 11, 12

*In re Cornerstone Propane Partners, L.P. Securities Litigation*,
  No. 03-2522, 2006 WL. 1180267 (N.D. Cal. May 3, 2006) ............................................ 12

*Dura Pharmaceuticals, Inc. v. Broudo*,
  544 U.S. 336 (2005) ................................................................................................... 10, 11

*In re Flag Telecom Hldgs., Ltd. Securities Litigation*,
  574 F.3d 29 (2d. Cir. 2009) .............................................................................................. 12

*Green v. Occidental Petroleum Corp.*,
  541 F.2d 1335 (9th Cir. 1976) .................................................................................... 10, 11

*Hanon v. Dataproducts Corp.*,
  976 F.2d 497 (9th Cir. 1992) ............................................................................................. 3

*Malone v. Microdyne Corp.*,
  148 F.R.D. 153 (E.D. Va. 1993) ........................................................................................ 3

*Roth v. Aon Corp.*,
  238 F.R.D. 603 (N.D. Ill. 2006) ................................................................................. 11, 12

*Shiring v. Tier Techs., Inc.*,
  244 F.R.D. 307 (E.D. Va. 2007) ........................................................................................ 3

*State of Alaska v. Suburban Propane Gas Corp.*,
  123 F.3d 1317 (9th Cir. 1997) ........................................................................................... 3

*Plaintiffs' Reply in Support of Plaintiffs'*
*Motion for Class Certification*
*No. 2:07-cv-0800-MJP*
*Page ii*

SUSMAN GODFREY L.L.P.
1201 Third Avenue, Suite 3800
Seattle, WA 98101-3000
Tel: (206) 516-3880; Fax: (206) 516-3883

1020111v1/010251

1

*Tsirekidze, v. Syntax-Brillian Corp.*,
   No. CV-07-02204-PHX-FJM, 2009 WL. 2151838 (D. Ariz. July 17, 2009) ............ 6, 7, 11

2

3

*Welling v. Alexy*,
   155 F.R.D. 654 (N.D.Cal.1994) ........................................................................................ 6

4

5

*In re Winstar Commc'ns*,
   No. 01-3014, 2006 WL. 473885 (S.D.N.Y. Feb. 27, 2006) .............................................. 12

6

7

*Wool v. Tandem Computers, Inc.*,
   818 F.2d 1433 (9th Cir. 1987) .............................................................................. 10, 11, 12

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

*Plaintiffs' Reply in Support of Plaintiffs'*       SUSMAN GODFREY L.L.P.
*Motion for Class Certification*                    1201 Third Avenue, Suite 3800
*No. 2:07-cv-0800-MJP*                              Seattle, WA  98101-3000
*Page iii*                                          Tel:  (206) 516-3880; Fax: (206) 516-3883

1020111v1/010251

Defendants do not oppose certification of the class in this case. Their brief acknowledges that the requirements for class certification are satisfied in this case. Defendants raise only two issues: First, they oppose certification of the insider trading subclass if David Wilczynski is appointed as its representative based on his claimed lack of typicality and adequacy. Second, they oppose including in-and-out traders in the class. Defendants' arguments fail for the reasons set forth below.

## I.  BACKGROUND ON DAVID WILCZYNSKI

A review of the relevant facts demonstrates that David Wilczynski's claims are typical of the claims of other subclass members and that he meets the standard of adequacy of representation required under F.R.Civ.P. 23. Mr. Wilczynski graduated from the University of Toledo with a Bachelor of Science in biology in 1972. (Wilczynski Decl. ¶ 2; Dep. 20:24–21:5.)[1] He had a successful career spanning thirty-five years in pharmaceutical sales and marketing for Mallinckrodt Pharmaceuticals, McNeil Pharmaceuticals (a division of Johnson & Johnson), DuPont Pharmaceuticals, and Monogram Biosciences. (Wilczynski Decl. ¶ 2; Dep. 21:21–22:19.) He was never terminated from any of these positions. (Dep. 22:10-12.) He is now retired by choice and spends "two to three hours a day" managing his investment portfolio, which consists entirely of long-term investments in biotechnology companies. (Dep. 25:20–22; 26:5–9.)

Mr. Wilczynski carefully researched Dendreon before investing in Dendreon common stock. He looked at stock analyst reports, press releases, and Internet message board discussions. (Dep. 30:24–31:6; 31:24–32:5.) He also "read or perused SEC reports" (Dep. 171:25–172:7), and listened to every conference call held by Dendreon since March 29, 2007 (Dep. 40:15-21, 81:4–14)—including the call during which defendant

---

[1] Transcript of the Deposition of David Wilczynski (Feb. 9, 2010), attached as Exhibit C to Declaration of Daniel Shih.

*Plaintiffs' Reply in Support of Plaintiffs'*  SUSMAN GODFREY L.L.P.
*Motion for Class Certification*  1201 Third Avenue, Suite 3800
*No. 2:07-cv-0800-MJP*  Seattle, WA 98101-3000
*Page 1*  Tel: (206) 516-3880; Fax: (206) 516-3883

1020111v1/010251

David Urdal represented that Dendreon had "hosted a good inspection" (TAC ¶ 7). Relying specifically on that statement, among other things, Mr. Wilczynski purchased additional shares of Dendreon common stock. (Dep. 81:4–14.)

After Dendreon disclosed that the FDA had not approved Provenge, Mr. Wilczynski concluded that his potential losses from the misrepresentation amounted to at least "$2 million." (Dep. 88:21–89:5.) On his own initiative, he subsequently contacted Kenneth McGuire, the lead plaintiff, and asked for contact information for Mr. McGuire's attorneys because he wanted to know "who I can talk to to get involved with this case." (Dep. 63:24–64:7.) Nobody contacted him to suggest that he participate in a lawsuit (Dep. 91:12–92:1); rather, Mr. Wilczynski himself sought out legal representation because of his concerns about the disclosures made by Dendreon that lie at the heart of this case.

## II. ARGUMENT ON REPLY

### A. Defendants Fail to Establish That Unique Defenses Apply to Mr. Wilczynski.

Defendants contend that Mr. Wilczynski lacks typicality because of "unique defenses" that allegedly may be asserted premised upon: (1) his belief that the market as a whole undervalued Dendreon's and other companies' stock; and (2) certain statements he posted on Internet blogs. Defendants cite no cases in which a court has found lack of typicality based on such factors. In any event, neither claimed "defense" presents a substantive ground for finding lack of typicality.

Plainly, defendants have not shown that Mr. Wilczynski does not share with other subclass members a claim for insider trading based on defendant Mitchell Gold's April 2, 2007 sale. Defendants argue that Mr. Wilczynski's belief that certain market participants—namely, short sellers—have suppressed Dendreon's stock price shows that his claims are subject to a defense of non-reliance unique to him. As a preliminary matter, defendants fail to explain how Mr. Wilczynski's beliefs about why the market has undervalued Dendreon's

*Plaintiffs' Reply in Support of Plaintiffs'*  SUSMAN GODFREY L.L.P.
*Motion for Class Certification*  1201 Third Avenue, Suite 3800
*No. 2:07-cv-0800-MJP*  Seattle, WA 98101-3000
*Page 2*  Tel: (206) 516-3880; Fax: (206) 516-3883

1020111v1/010251

stock are relevant to any conceivable legal defense of non-reliance. To dispel the presumption of reliance, defendants must "[prove] that an individual plaintiff purchased despite knowledge of the falsity of a representation, or that he would have, had he known of it." *Blackie v. Barrack*, 524 F.2d 891, 906 (9th Cir. 1975).

None of the facts cited by defendants support such a showing, and the cases defendants cite all deal with circumstances that are a far cry from the facts of this case.[2] Indeed, a class representative's belief that the market has undervalued a company is properly considered as weighing ***in favor*** of typicality. Virtually any rational buyer of a stock believes that the stock is more valuable than the value placed on the stock by the market as a whole. *Malone v. Microdyne Corp.*, 148 F.R.D. 153, 159 (E.D. Va. 1993) ("Thus, virtually every investment transaction is entered on the belief that a particular investment is undervalued by the market relative to other comparable investments. This does not mean that all investors motivated by the desire to make an above average return on their investment are not relying on the integrity of the marketplace.").

All of the testimony defendants cite merely establishes that Mr. Wilczynski believed in Dendreon's future prospects. (Defs.' Opp. at 5–6.) He believed that short sellers spread negative opinions and criticism about a company, resulting in an undervaluation of a company's stock. He referred to this as "manipulation," but in no sense was he using the term as would a lawyer versed in the securities laws would:[3]

---

[2] *See State of Alaska v. Suburban Propane Gas Corp.*, 123 F.3d 1317, 1321 (9th Cir. 1997) (finding states and corporations had atypical bargaining power providing "opportunities to avoid injury altogether" in antitrust case); *Shiring v. Tier Techs., Inc.*, 244 F.R.D. 307, 313 (E.D. Va. 2007) (finding unique defense where plaintiff may have purchased shares based on insider information "rather than on publicly available information"); *Hanon v. Dataproducts Corp.*, 976 F.2d 497, 508 (9th Cir. 1992) (finding plaintiff's "reliance on the integrity of the market would be subject to serious dispute as a result of his extensive experience in prior securities litigation, his relationship with his lawyers, his practice of buying a minimal number shares of stock in various companies, and his uneconomical purchase of only ten shares of stock").

[3] Mr. Wilczynski appears to label many acts "manipulation," including the dissemination of

*Plaintiffs' Reply in Support of Plaintiffs'*　　　　SUSMAN GODFREY L.L.P.
*Motion for Class Certification*　　　　　　　　1201 Third Avenue, Suite 3800
*No. 2:07-cv-0800-MJP*　　　　　　　　　　　 Seattle, WA 98101-3000
*Page 3*　　　　　　　　　　　　　　　　　　Tel: (206) 516-3880; Fax: (206) 516-3883

1020111v1/010251

> Q. Do you believe short sellers manipulated Dendreon stock?
>
> A. Yes.
>
> Q. How?
>
> * * *
>
> A. Putting uncertainty out into the investing community that the drug Provenge was not effective; always countering in a negative way medical reports relative to the science of the cassette technology that Dendreon employs; putting out information in data that the markets or the business model has never been tested, it's an immune therapy type vaccine, you've never seen anything like that in the history of cancer treatment; negative, it's not going to work as good as chemotherapy, on and on and on constantly, daily.

(Dep. 60:4–19.)

Defendants attempt to characterize Mr. Wilczynski's beliefs as at odds with the notion that defendants' misrepresentation of the results of the FDA inspection artificially inflated the market price of Dendreon stock. (Defs. Opp. at 4–5.) But no inconsistency exists. The market price of a stock actively traded in an efficient market—and defendants do not challenge the efficiency of the market in this case—reflects an equilibrium between purchasers, such as Mr. Wilczynski and other class members, and sellers, such as short sellers. That Mr. Wilczynski may have believed the true value of the stock was higher than the market does not render Mr. Wilczynski atypical in any way.

Defendants next cite Mr. Wilczynski's postings on investor message boards or blogs as a basis for supposedly unique defenses. But nothing about these postings establishes that his claims are atypical or that he would be inadequate. Like most participants in such forums, Mr. Wilczynski posted using a "screen name." (Dep. 20:17–20.) Anyone who has

---

negative information by short sellers (as described in the quoted testimony) and trading activity such as "naked short-selling" (Dep. 165:19). Although he does believe Wall Street is to some extent "rigged" by big players, such as market makers (Dep. 165:13-20), nowhere does he suggest the market is so rigged as to call into question the presumption that Dendreon's stock price reflected all publicly available information at the time he made his purchases. Moreover, in light of the widely-publicized allegations of market manipulation in recent years—such as Bear Stearns and Lehman Brothers—it is hardly unexpected that the average investor would believe that naked short selling can be used to "manipulate" markets.

*Plaintiffs' Reply in Support of Plaintiffs'*  SUSMAN GODFREY L.L.P.
*Motion for Class Certification*  1201 Third Avenue, Suite 3800
*No. 2:07-cv-0800-MJP*  Seattle, WA 98101-3000
*Page 4*  Tel: (206) 516-3880; Fax: (206) 516-3883

1020111v1/010251

read such discussions understands that participants often take extreme positions, play devil's advocate to goad others into interesting discussions, and make sarcastic comments. Testifying about one posting in which he referred to the FDA as the "most hated" agency in the country and called the FDA "the reason investors lost big time not DNDN," Mr. Wilczynski confirms that this statement was not to be taken literally, that he was just joining in the "venting" of other investors, and that he often sarcastically paraphrased the posts of other commentators. (Dep. 141:6–142:17). In responding to the questioner's accusation that he had lied in his post, Mr. Wilczynski made reference to another posting containing comments that, in hindsight, were more offensive than ironic: "No, I also posted a comment about Dr. Hussain which I didn't mean. So no." (Dep. 142:24–143:2.)

In short, the evidence is clear that Mr. Wilczynski's postings on Internet forums are not a reason why he should be disqualified as a plaintiff. Nothing in Mr. Wilczynski's actions comes close to suggesting he would have been indifferent to the disclosure of the truth about the CMC manufacturing issues, and his postings certainly do not indicate that he would have purchased Dendreon stock if he had known about the CMC manufacturing issues. Indeed, his testimony unequivocally supports his reliance on the false statements made by defendants.[4]

Defendants also mischaracterize Mr. Wilczynski's opinion that Provenge should have been approved, despite manufacturing issues, as a basis for lack of typicality. (Defs.' Opp. at 7.) As a preliminary matter, even if this were an accurate characterization of his opinion (which it is not), this opinion could not give rise to a unique defense. That the FDA did not do what it "should" have hardly excuses defendants' false statements about known

---

[4] Mr. Wilczynski actually listened to the conference call on March 29, 2007, during which Mr. Urdal made the "good inspection" misrepresentation. (Dep. 81:4–14.) Months later, after learning the truth, "I felt I was misled by, you know, some representatives of Dendreon." (Dep. 86:6–7.)

*Plaintiffs' Reply in Support of Plaintiffs'*  SUSMAN GODFREY L.L.P.
*Motion for Class Certification*  1201 Third Avenue, Suite 3800
*No. 2:07-cv-0800-MJP*  Seattle, WA 98101-3000
*Page 5*  Tel: (206) 516-3880; Fax: (206) 516-3883

1020111v1/010251

risks and events. More importantly, although defendants pretend otherwise, Mr. Wilczynski used the word "approval" in his testimony in a colloquial sense to refer to the determination by the FDA that a product satisfies efficacy requirements. He was not using "approval" in the sense of the FDA approving Dendreon's application, which requires satisfaction of manufacturing criteria in addition to demonstrating efficacy:

> A.  Our feeling at the time and my feeling was that the data was more than adequate and <u>the Advisory Committee had overwhelmingly recommended for approval</u> and we felt that politics of the FDA had delayed the—you know, delayed the approval of Provenge which they did.
>
> * * *
>
> Q.  And despite [the] manufacturing issues, do you feel that Provenge still should have been approved?
>
> A.  Do I feel that Provenge should have been approved? Yes.
>
> Q.  Why?
>
> A.  Most likely, I base my decision-making process on what the experts, the Advisory Committee meeting, had decided on.

(Dep. 93:13-94:9 (objection omitted and emphasis added).) Mr. Wilczynski's references to the Advisory Committee recommending "approval" establish that he thought the FDA should have signed off on the question of <u>efficacy</u>, not ignore Dendreon's manufacturing issues. As a result, his testimony does not suggest any unique defense.

### B.   Mr. Wilczynski Satisfies the Adequacy Requirement.

"Courts have developed a standard of 'striking unfamiliarity' to assess a representative's adequacy in policing the prosecution of his or her lawsuit." *Tsirekidze, v. Syntax-Brillian Corp.*, No. CV-07-02204-PHX-FJM, 2009 WL 2151838, at *5 (D. Ariz. July 17, 2009) (quoting *Welling v. Alexy*, 155 F.R.D. 654, 659 (N.D.Cal.1994)). Here, defendants cannot come close to meeting that standard. Defendants' arguments about Mr. Wilczynski's supposed inadequacy draw together misleading snippets of his deposition testimony—provided in response to a six-hour "pop quiz" on legal terms of art and the contents and purpose of each filing in this case—to paint an inaccurate picture of his actual involvement in, understanding of, and commitment to the prosecution of this case.

*Plaintiffs' Reply in Support of Plaintiffs'*  
*Motion for Class Certification*  
*No. 2:07-cv-0800-MJP*  
*Page 6*

SUSMAN GODFREY L.L.P.  
1201 Third Avenue, Suite 3800  
Seattle, WA 98101-3000  
Tel: (206) 516-3880; Fax: (206) 516-3883

1020111v1/010251

Mr. Wilczynski's responses to defendants' questions during his deposition demonstrate his familiarity with the key pleadings in the case. He recognized two complaints filed <u>before</u> he became a named plaintiff in the case: the original class action complaint, which he had read, and the first amended complaint (FAC). (Dep. 100:1–10, 113:22–114:4.) He also recognized the second amended complaint (SAC), the first complaint naming him as a plaintiff. (Dep. 115:3–8.) Although Mr. Wilczynski did not specifically recall the third amended complaint (TAC) (Dep. 120:4–14), his testimony indicates that he generally had reviewed each of the complaints:

> I reviewed the complaint. Amended one, two, and three are similar documents with perhaps changes that I don't recall the specific changes, but I have reviewed the document in general which is the complaint, yes, I have. Several times.

(Dep. 119:11–15.)[5]

In addition to the complaints, Mr. Wilczynski was familiar with the other pleadings that defendants presented to him. He had read the Protective Order and understood it. (Dep. 108:18–25.) He also recognized Plaintiffs' Motion for Class Certification, had reviewed the document before it was filed, had authorized counsel to file it on his behalf, and had "probably reviewed it three or four times" in total. (Dep. 78:10–22, 79:21–80:4.)

Defendants contend that Mr. Wilczynski has no understanding of a subclass or his role as a subclass representative, but fail to identify any specific misapprehension that Mr. Wilczynski is supposedly under. (Defs.' Opp. at 9.) Instead, they cite off-point testimony in response to an open-ended question interposed as an interruption during the deposition:

---

[5] It is hardly surprising that, sitting in his deposition, Mr. Wilczynski did not specifically remember what had changed in the TAC relative to the SAC. The TAC contained only a handful of changes relating to defendants' state of mind when they committed alleged wrongful acts. In light of the nature of the modifications, that Mr. Wilczynski could not specifically recall reviewing the TAC has no bearing on his adequacy. *Cf. Tsirekidze,* 2009 WL 2151838, at *5 (finding lead plaintiff adequate and certifying class even though plaintiff "was not aware of the specific fraudulent misrepresentations alleged in this case" and "he did not read all of the interrogatory responses that he verified").

*Plaintiffs' Reply in Support of Plaintiffs'*  SUSMAN GODFREY L.L.P.
*Motion for Class Certification*  1201 Third Avenue, Suite 3800
*No. 2:07-cv-0800-MJP*  Seattle, WA 98101-3000
*Page 7*  Tel: (206) 516-3880; Fax: (206) 516-3883

1020111v1/010251

> A. And I'm a class—subclass representative but—
>
> Q. What's a subclass?
>
> A. Basically, in my understanding, an individual that is available to support Ken as being the lead plaintiff and also the fact that I have some minor experience with manufacturing issues that can delay the approval of drugs, FDA approval, so I have some experience there. That's why I agreed to be a representative.

(Dep. 84:8–17.) The testimony fails to support defendants' argument. The testimony does not relate to what a subclass is; it is clear that Mr. Wilczynski interpreted "What's a subclass?"—which came as an interruption to his testimony about why he was a subclass representative—as asking for information about why he chose to take on the role.

When defendants did ask Mr. Wilczynski directly about his duties, his answers establish his adequacy as a class representative. Mr. Wilczynski understood that, if appointed as a representative, he would have "a fiduciary obligation to members of the class." (Dep. 154:22–25.) When asked what that meant to him, he responded, "To represent the class to the best of my ability in the most truthful way, my interpretation." (Dep. 155:1–3.) Moreover, when asked, "How much time are you willing to spend supervising this lawsuit?," he testified: "As much as is required." (Dep. 159:13–15.)[6]

Defendants next complain about the limited amount of time Mr. Wilczynski has spent on this lawsuit. (Defs.' Opp. at 10.) He testified, "I don't keep track" of the hours spent, but he roughly estimated "12 to 15 hours." (Dep. 158:23–159:2.) There is nothing problematic about this answer. And defendants' contention that Mr. Wilczysnki "made *no* effort to search for documents," (Defs.' Opp. at 10), is completely at odds with clear

---

[6] Defendants point to Mr. Wilczynski's uncertainty about the Judge's name and whether the case was pending in state or federal court as evidence of his inadequacy. (Defs.' Opp. at 9.) Defendants cite no authority suggesting that lack of such knowledge renders a class representative inadequate. Moreover, the transcript reveals Mr. Wilczynski fully understands matters more consequential to a class representative, including plaintiffs' demand for a jury trial—"Going back to this lawsuit, are you requesting a trial by jury in this matter? A: Yes." (Dep. 150:23–25)—and the nature of remedies sought (Dep. 151:4–18).

*Plaintiffs' Reply in Support of Plaintiffs'*
*Motion for Class Certification*
*No. 2:07-cv-0800-MJP*
*Page 8*

SUSMAN GODFREY L.L.P.
1201 Third Avenue, Suite 3800
Seattle, WA 98101-3000
Tel: (206) 516-3880; Fax: (206) 516-3883

1020111v1/010251

testimony that he had gathered documents in response to the requests: "Q. Did you gather any documents in response to this? A. Yes." (Dep. 12:8–10.) Defendants also walked through some specific document requests and asked whether he had provided such documents; the answer each time was "Yes." (Dep. 12:18–13:7.) Defendants misquote, and then mischaracterize, Mr. Wilczynski's testimony that he "Just must have missed it" (Dep. 102:5) as referring to the entire set of defendants' requests for production. (Defs.' Opp. at 10.) In fact, what he was referring to was his misreading of what time period applied to defendants' requests for stock transaction records. (Dep. 100:16–102:5.)[6] He never testified that he "just missed" the entire set of requests, contrary to what defendants attempt to suggest. (Defs.' Opp. at 10.)[7]

### C. In-and-Out Traders Are Properly Part of the Class.

Defendants contend that persons who sold their stock before the "corrective disclosures" should be excluded from the class. (Defs.' Opp. at 12.) The argument fails under long-standing Ninth Circuit precedent.

In *Wool v. Tandem Computers, Inc.,* 818 F.2d 1433 (9th Cir. 1987), the plaintiff was

---

[6] During a break in the deposition, Mr. Wilczynski downloaded complete records from his brokerage account and provided to defendants the records for the time period he had missed. (Dep. 95:19–96:1.)

[7] Defendants other attacks are similarly without merit. Defendants cite Mr. Wilczynski's attempt at humor in stating that the attorneys would end up with the majority of the settlement; as defendants' counsel remarked, he winked when he said it. (Defs.' Opp. at 10–11.) Mr. Wilczynski's testimony about his interrogatory responses also provides no grounds for finding him inadequate. Defendants fault his plainly mistaken answer on the meaning of "integrity of the market." (Defs.' Opp. at 6, 9–10.) But they point to no authority suggesting a class representative—a non-lawyer and non-economist—should be expected to be able to correctly define legal or economic terms of art. Moreover, Mr. Wilczynski's testimony is clear that he did rely on the presumption that defendants had not misled the market. Defendants also fault him for stating reliance on SEC filings in his interrogatory responses when he could not recall looking at such filings during his deposition. (Defs.' Opp. at 10.) But he testified that he had "read or perused SEC reports" (Dep. 172:2–3); he just considered them background as opposed to drivers of his investment decisions (Dep. 171:8–13). Such testimony is not contradictory of his interrogatory responses, let alone indicative of inadequacy.

*Plaintiffs' Reply in Support of Plaintiffs'*          SUSMAN GODFREY L.L.P.
*Motion for Class Certification*                       1201 Third Avenue, Suite 3800
*No. 2:07-cv-0800-MJP*                                 Seattle, WA 98101-3000
*Page 9*                                               Tel: (206) 516-3880; Fax: (206) 516-3883

1020111v1/010251

an in-and-out trader who indisputably sold his stock before any corrective disclosure was made. The question before the Ninth Circuit was whether "an in-and-out trader, such as Wool, suffers recoverable damages under *Blackie* [*v. Barrack,* 524 F.2d 891 (9th Cir.1975)], and *Green* [*v. Occidental Petroleum Corp.*, 541 F.2d 1335 (9th Cir. 1976)] only if there was a disclosure which either partially or completely corrected the specific misrepresentation at issue." *Wool,* 818 F.2d at 1437. In *Wool*, the Ninth Circuit answered this question in the negative, holding that "[b]ecause market forces are independent of corrective disclosures, an in-and-out trader, such as Wool, may suffer recoverable damages under the out-of-pocket rule even in the absence of corrective disclosures." *Id.* (emphasis added).

The logic of *Wool* is straightforward: the price inflation caused by misrepresentations over the course of a class period cannot be presumed to be a constant dollar amount as a matter of law. The share price of a stock might be inflated by $5 on a day during the first month of a class period, and yet be inflated by only $2 on a day in the second month of the class period due to changing market conditions, even though no corrective disclosure has been made.[8] A trader who buys in the first month and sells in the second month has been damaged by $3—the difference between the price inflation at the time of purchase and the price inflation at the time of sale—even though no corrective disclosure had been made. *See id.* (discussing a similar hypothetical); *Green,* 541 F.2d at 1341-46 (Sneed, J., concurring).

The primary case relied upon by defendants, *Dura Pharmaceuticals, Inc. v. Broudo*, 544 U.S. 336 (2005), does not purport to overrule or limit *Wool, Blackie*, *Green* or their progeny. *Dura*'s holding is narrow: it rejected, on a motion to dismiss, the contention that the mere allegation that a plaintiff purchased stock at an inflated price was sufficient to

---

[8] Here, for example, the price of Dendreon stock reached almost $25 per share on April 9, 2007, and then dropped to between $15 and $20 a share during late April and early May as market confidence dissipated. It is reasonable to assume that the price inflation on April 9, 2007—shortly after the March conference call announcing that there were no foreseeable impediments to approval—was greater than the price inflation on May 1, 2007.

*Plaintiffs' Reply in Support of Plaintiffs'*  
*Motion for Class Certification*  
*No. 2:07-cv-0800-MJP*  
*Page 10*

SUSMAN GODFREY L.L.P.  
1201 Third Avenue, Suite 3800  
Seattle, WA 98101-3000  
Tel: (206) 516-3880; Fax: (206) 516-3883

1020111v1/010251

prove loss causation. The Court in *Dura* did not impose a requirement that the plaintiff sell following a corrective disclosure, nor did it consider other ways that the plaintiff could plead and prove loss causation. As one district court has observed:

> The parties' extensive briefing in the Supreme Court [in *Dura*] included specific discussion of Judge Sneed's out-of-pocket approach to damages (as set forth in *Green*, discussed supra). However the Supreme Court did not even mention that topic in the *Dura Pharmaceuticals* opinion. It is difficult to conclude that *Dura Pharmaceuticals* stands for an endorsement of any particular economic loss/damage principles of law.

*In re Cigna Corp. Secs. Litig.*, 459 F. Supp. 2d 338, 353-54 (E.D.Pa. 2006).

*Wool* remains binding authority in this Circuit. Indeed, numerous post-*Dura* cases, including two recent cases within this Circuit, have certified classes that include in-and-out traders.[9] As the district court in *Roth v. Aon Corp.*, 238 F.R.D. 603 (N.D.Ill. 2006), stated:

> The court is mindful of the Supreme Court's admonishment in *Dura*: "an inflated purchase price will not itself constitute or proximately cause the relevant economic loss." 125 S.Ct. at 1631. The court cannot conclusively determine, however, at this point in the litigation, that a certain group of potential class members can never prove loss causation. Plaintiffs have properly pled that their losses were caused by Defendants' allegedly unlawful acts and omissions. The court therefore will include the "in-and-out" traders in the proposed class, but the court will limit the class to those persons or entities who were damaged by their acquisition of Aon stock during the Class Period.

*Id.* at 608.

As these courts have concluded, the question of whether in-and-out traders can

---

[9] *See In re Cooper Companies Inc. Secs. Litig.,* 254 F.R.D. 628, 641 (C.D.Cal. 2009) (certifying class including in-and-out traders and stating that issues of loss causation are not properly resolved at the class certification stage); *Tsirekidze,* 2009 WL 2151838, at *4 (certifying class notwithstanding that class representative sold its shares "before material information regarding Syntax's alleged misconduct was disclosed"); *In re BearingPoint, Inc. Secs. Litig.*, 232 F.R.D. 534, 544 (E.D.Va. 2006) ("[T]he inflationary effect of a misrepresentation might well diminish over time, even without a corrective disclosure, and thus in-and-out traders in this circumstance would be able to prove loss causation. . . . [B]ecause in-and-out traders may conceivably prove loss causation, they are appropriately counted as members of the proposed class.").

*Plaintiffs' Reply in Support of Plaintiffs'*   SUSMAN GODFREY L.L.P.
*Motion for Class Certification*                 1201 Third Avenue, Suite 3800
*No. 2:07-cv-0800-MJP*                           Seattle, WA 98101-3000
*Page 11*                                        Tel: (206) 516-3880; Fax: (206) 516-3883

1020111v1/010251

establish loss causation based on variances in the degree of price inflation between their purchases and sale is a question of fact that cannot be resolved on a motion for class certification.[10]  *See In re Cooper Companies Inc. Secs. Litig.,* 254 F.R.D. at 641 ("Defendants also argue that certain kinds of investors—short sellers, in-and-out traders, and index holders—are not entitled to the fraud-on-the-market presumption because they cannot show loss causation. This argument is similarly misplaced at the class certification stage. . . . If Defendants can show, as a matter of law, that certain proposed class members' losses were not caused by misstatements, then they should do so at summary judgment or trial."); *Roth v. Aon Corp.*, 238 F.R.D. at 608; *In re BearingPoint, Inc. Secs. Litig.*, 232 F.R.D. at 544; *see also* Motion for Class Certification at 17, n.3 (collecting cases holding that loss causation is not properly decided on a motion for class certification).

### III.    CONCLUSION

For the foregoing reasons, and those stated in plaintiffs' motion for class certification, it is respectfully submitted that plaintiffs' motion should be granted.

---

[10] The cases cited by defendants are either inapposite, from outside this Circuit, or support plaintiffs' position. The court in *In re Winstar Commc'ns*, No. 01-3014, 2006 WL 473885 (S.D.N.Y. Feb. 27, 2006), denied a motion to dismiss and held that loss causation may be established even in the absence of a corrective disclosure. *Id*. at *15. It does not support defendants' argument. *In re Flag Telecom Hldgs., Ltd. Secs. Litig.*, 574 F.3d 29 (2d. Cir. 2009), and *In re Am. Italian Pasta Co. Secs. Litig.*, No. 05-0725, 2007 WL 927745 (W.D. Mo. Mar. 26, 2007), have not been cited, let alone followed, by the Ninth Circuit, and conflict with *Wool*. And *In re Cornerstone Propane Partners, L.P. Secs. Litig.*, No. 03-2522, 2006 WL 1180267 (N.D. Cal. May 3, 2006), which held that the existence of loss causation is properly decided on a motion for class certification, was decided before—and conflicts with—the overwhelming weight of authority from within this Circuit holding that question of loss causation are <u>not</u> properly resolved at the class certification stage. *See* Motion for Class Certification at 17, n.3 (collecting cases).

*Plaintiffs' Reply in Support of Plaintiffs'*     SUSMAN GODFREY L.L.P.
*Motion for Class Certification*                  1201 Third Avenue, Suite 3800
*No. 2:07-cv-0800-MJP*                            Seattle, WA 98101-3000
*Page 12*                                         Tel: (206) 516-3880; Fax: (206) 516-3883

1020111v1/010251

| | |
|---|---|
| Dated: March 17, 2010. | Respectfully submitted, |

> By:    /s/ Ryan C. Kirkpatrick
> Marc M. Seltzer (admitted *pro hac vice*)
> Ryan C. Kirkpatrick (admitted *pro hac vice*)
> SUSMAN GODFREY L.L.P.
> 1901 Avenue of the Stars, Suite 950
> Los Angeles, CA 90067-6029
> E-mail: mseltzer@susmangodfrey.com
> E-mail: rkirkpatrick@susmangodfrey.com
> Tel: (310) 789-3100
> Fax: (310) 789-3150
>
> Daniel J. Shih (WSBA #37999)
> SUSMAN GODFREY L.L.P.
> 1201 Third Avenue, Suite 3800
> Seattle, WA 98101-3000
> E-mail: dshih@susmangodfrey.com
> Tel: (206) 516-3880
> Fax: (206) 516-3883
>
> *Counsel for Plaintiffs*

*Plaintiffs' Reply in Support of Plaintiffs'*
*Motion for Class Certification*
*No. 2:07-cv-0800-MJP*
*Page 13*

SUSMAN GODFREY L.L.P.
1201 Third Avenue, Suite 3800
Seattle, WA 98101-3000
Tel: (206) 516-3880; Fax: (206) 516-3883

1020111v1/010251

# CERTIFICATE OF SERVICE

I hereby certify that on March 17, 2010, I electronically filed the foregoing *Plaintiffs' Reply in Support of Plaintiffs' Motion for Class Certification* with the Clerk of the Court using the CM/ECF system, which will send notification of such filing to all counsel of record.

By  /s/ Ryan C. Kirkpatrick
  Ryan C. Kirkpatrick

*Plaintiffs' Reply in Support of Plaintiffs'*
*Motion for Class Certification*
*No. 2:07-cv-0800-MJP*
*Page 1*

SUSMAN GODFREY L.L.P.
1201 Third Avenue, Suite 3800
Seattle, WA 98101-3000
Tel: (206) 516-3880; Fax: (206) 516-3883

1020111v1/010251