The Honorable Marsha J. Pechman

UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| KENNETH MCGUIRE and DAVID WILCZYNSKI, On Behalf of Themselves and All Others Similarly Situated,<br><br>Plaintiffs,<br><br>vs.<br><br>DENDREON CORPORATION, et al.<br><br>Defendants. | Case No. C07-800<br><br>**CLASS ACTION**<br><br>**ORDER ON MOTION FOR CLASS CERTIFICATION** |

This matter is the named Plaintiffs' motion for class certification. This Court, having received and reviewed

1. Plaintiffs' Motion for Class Certification (Dkt. No. 137)
2. Defendants' Opposition to Plaintiffs' Motion for Class Certification (Dkt. No. 151)
3. Plaintiffs' Reply in Support of Plaintiffs' Motion for Class Certification (Dkt. No. 156)

and all attached declarations and exhibits, makes the following ruling:

IT IS HEREBY ORDERED that plaintiffs' motion is GRANTED; a class will be certified in this matter as follows:

> A class of persons and entities who purchased the common stock of Dendreon Corporation between March 29, 2007 and May 8, 2007, both dates inclusive (excluding the defendants, the officers and directors of Dendreon, members of their immediate families, and the heirs, successors or assigns of any of the foregoing).
> A further subclass consisting of persons and entities who purchased the common stock of Dendreon Corporation on April 2, 2007 (excluding the defendants, the officers and directors of Dendreon, members of their immediate families, and the heirs, successors or assigns of any of the foregoing).

IT IS FURTHER ORDERED that Kenneth McGuire and David Wilczynski are appointed as the Class representatives, David Wilczynski is appointed the Subclass representative, and their counsel of record – Susman Godfrey L.L.P – is appointed as Class counsel.

## I.   BACKGROUND

This Court appointed McGuire as the lead plaintiff in this action. (Dkt. No. 40 at 9.) McGuire and Wilczynski have filed a Third Amended Complaint, which is the operative complaint at this time. (Dkt. No. 118.)

The complaint alleges that the defendants misrepresented the results of a United States Food and Drug Administration ("FDA") inspection of Dendreon's manufacturing facilities, and that Gold engaged in insider trading when he sold Dendreon stock with full knowledge of the results of the inspection and before the results were publicly disclosed. (Id. at 2-7.)

Dendreon is a biotechnology company developing Provenge, a cancer treatment product with a one-billion dollar potential market. (Id. at 2.) In mid-February 2007, the FDA conducted an inspection of Dendreon's manufacturing facilities. (Id. at 3.) After the inspection, the FDA issued Dendreon an Inspectional Observations Report on Form 483 detailing multiple "significant objectionable conditions." (Id.) Dendreon could not obtain FDA approval of Provenge until the "significant objectionable conditions" were resolved. (Id.)

On March 29, 2007, during a conference call with securities analysts and investors, one analyst asked Gold whether Dendreon's facilities "passed muster." (Id. at 4.) As Gold began to respond, Urdal interrupted and stated that "we hosted a good inspection." (Id. at 4, 7.) The next day, Dendreon common stock experienced heavy trading volume and its price increased 343%. (Id. at 5.) Four days later, Gold sold 24% of his holdings of Dendreon stock for approximately $2.7 million. (Id.)

On May 8, 2007, the FDA rejected Dendreon's application to approve Provenge, citing the inspection issues as one of the two reasons for its decision. (Id.) The market price of Dendreon common stock dropped from $17.74 to $6.33 per share that day. (Id.) On May 10, 2007, during a conference call with securities analysts and investors, defendants acknowledged for the first time that the Form 483 had been issued in February, it identified multiple "significant objectionable conditions," and the FDA had cited those same issues in declining to approve Provenge. (Id.)

Plaintiffs seek certification of a class with a class period beginning on March 29, 2007, the date of the first conference call, running through May 8, 2007, the day just before the disclosure of the FDA's rejection of Dendreon's application to approve Provenge. Both McGuire and Wilczynski purchased shares of Dendreon common stock during the Class Period. (Id. at 8.) McGuire and Wilczynski contend that Defendants' actions violated federal securities laws and that they and others who purchased Dendreon stock during the Class Period were injured and suffered damages as a result of these violations. Plaintiffs also seek certification of a subclass consisting of people who purchased Dendreon stock on April 2, 2007, the date Gold sold his shares. Wilczynski purchased 5,200 shares of Dendreon stock on that date. (Id. at 38.)

II.     ANALYSIS

   A.      Legal Standards

This Court is given discretion over whether to certify a class. Yokoyama v. Midland Nat. Life Ins. Co., 594 F.3d 1087, 1090 (9th Cir. 2010). This Court may certify a class only if:

> (1) the class is so numerous that joinder of all members is impracticable;
> (2) there are questions of law or fact common to the class;
> (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class; and
> (4) the representative parties will fairly and adequately protect the interests of the class

Rodriguez v. Hayes, 591 F.3d 1105, 1122 (9th Cir. 2010) (quoting Fed. R. Civ. P. 23(a)). The party seeking certification must also fall into one of three categories in Rule 23(b). Id. Plaintiffs here seek certification under Rule 23(b)(3) which provides that this Court must find that common questions of law or fact predominate and the class action is superior to other methods of adjudication. Fed. R. Civ. P. 23(b)(3). This Court must conduct a "rigorous analysis" to determine if the prerequisites of 23(a) are satisfied. Chamberlan v. Ford Motor Co., 402 F.3d 952, 961 (9th Cir. 2005) (per curiam).

The Ninth Circuit has recently clarified the standards applicable to class certification. See Dukes v. Wal-Mart Stores, Inc., ___ F.3d ___, 2010 WL 1644259 (9th Cir. 2010) (en banc). The standard is:

> First, when considering class certification under Rule 23 district courts are not only at liberty to, but must, perform a rigorous analysis to ensure that the prerequisites of Rule 23 have been satisfied, and this analysis will often, though not always, require looking behind the pleadings to issues overlapping with the merits of the underlying claims. It is important to note that the district court is not bound by these determinations as the litigation progresses. Second, district courts may not analyze any portion of the merits of a claim that do not overlap with the Rule 23 requirements. Relatedly, a district court performs this analysis for the purpose of determining that each of the Rule 23 requirements has been satisfied. Third, courts must keep in mind that different parts of Rule 23 require different inquiries. For example, what must be satisfied for the commonality inquiry under Rule 23(a)(2) is that plaintiffs establish common *questions* of law and fact, and answering those questions is the purpose of the merits inquiry, which can be addressed at trial and at summary judgment. Fourth, district courts retain wide discretion in class certification decisions, including the ability to cut off discovery to avoid a mini-trial on the merits at the certification stage.

Id. at *16. Notably, the Ninth Circuit rejected the dissent's proffered "significant proof" standard for proving discrimination claims and accepted that plaintiffs need merely to properly allege their discriminatory policy claim. Id. at *17-18.

**B.     Class Certification**

**1.  Rule 23(a) requirements**

Defendants do not contest that Plaintiffs' proposed class satisfies the requirements for numerosity and commonality, nor do they contest that Plaintiff McGuire meets the standards for typicality and adequacy as the class representative.  The Court agrees: Plaintiffs' class as proposed could encompass thousands of members (making individual joinder in a single lawsuit impractical) and numerous questions of law and fact are common to the Class and Subclass.  The Court has previously found McGuire's claims typical of the Class and affirmed his adequacy as a class representative.  Dkt. No. 40.  Defendants' challenge to Wilczynski's qualifications is discussed below in Section C.

**2.  Rule 23(b)(3) requirements**

The party seeking certification must also qualify under one or more of the three categories in Rule 23(b).  Plaintiffs here seek certification under Rule 23(b)(3) which provides that this Court must find that common questions of law or fact predominate and the class action is superior to other methods of adjudication.  Fed. R. Civ. P. 23(b)(3).   Defendants do not dispute that common questions predominate and this Court is satisfied that they.

Plaintiffs also allege that a class action is the superior method of adjudication because the class size is so large and damages may be relatively small for many class members, making individual law suits impractical.  Plaintiffs further allege that a class action will be more economical, efficient, and fair in addressing all the claims at once in a uniform matter.  Defendant do not dispute that a class action would be superior and this Court is satisfied that it would be.

**C.     Subclass Certification**

Although Dendreon does not contest that the certification of the class overall is appropriate, it does contest the certification of the subclass of stock purchasers who bought their stock on April 2, 2007, the date Gold sold his shares, and the inclusion of in-and-out traders in

1 the overall class. In regards to the subclass, Defendants contest the typicality of Wilczynski's
2 claim and his adequacy as the subclass representative.

### 1. Typicality

Dendreon argues first that Wilczynski's claim is not typical because he is subject to unique defenses as revealed by his deposition testimony. The Ninth Circuit has held that "[t]he purpose of the typicality requirement is to assure that the interest of the named representative aligns with the interests of the class." Hanon v. Dataproducts Corp., 976 F.2d 497, 508 (9th Cir. 1992). The "test of typicality is whether other members have the same or similar injury, whether the action is based on conduct which is not unique to the named plaintiffs, and whether other class members have been injured by the same course of conduct." Id. (quotation marks omitted). A motion for class certification should not be granted if "there is a danger that absent class members will suffer if their representative is preoccupied with defenses unique to it." Id. (quotation marks omitted).

Dendreon argues that Wilczynski's deposition reveals several unique defenses. Dendreon points to Wilczynski's belief that the stock's price was suppressed by short sellers, and continues to be, as an argument that the price of Dendreon stock was not purchased at an inflated price. (Dkt. No. 157-1 at 14-16, Dkt. No. 152-1 at 6-8.) Dendreon also argues that Wilczynski's belief that the market is rigged by short sellers demonstrates he did not rely on the integrity of the market. (Dkt. No. 152-1 at 47.) Dendreon further points to Wilczynski's testimony at his deposition that his interrogatory answer that he "relied upon the integrity of the market" meant he relied upon the integrity of the cancer treatment market and not the stock market. (Id. at 55.) Dendreon finally points to Wilczynski's message board comments regarding the FDA's culpability in causing the stock price to fall and Wilczynski's testimony at his deposition that he thought Provenge still should have been approved to argue that Dendreon did not cause Wilczynski's losses. (Id. at 16-17, 35-38.) This Court addresses each argument in turn.

1    First, Dendreon's argument about Wilczynski's beliefs about short-sellers appears to be a non-reliance defense.  Generally, a purchaser of stock is entitled to a presumption that she relied on the integrity of the market.  <u>Basic Inc. v. Levinson</u>, 485 U.S. 224, 247 (1988).  However, a defendant can "rebut proof of the elements giving rise to the presumption." <u>Id.</u> at 248.  "Any showing that severs the link between the alleged misrepresentation and either the price received (or paid) by the plaintiff, or his decision to trade at a fair market price, will be sufficient to rebut the presumption of reliance." <u>Id.</u>  However, the Ninth Circuit has emphasized that "the defense of non-reliance is not a basis for denial of class certification." <u>Hanon</u>, 976 F.2d at 509.  This Court, however, is "at liberty to consider evidence which goes to the requirements of Rule 23 even though the evidence may also relate to the underlying merits of the case." <u>Id.</u> (citation omitted).

Dendreon's argument about Wilczynski's beliefs about short-sellers demonstrates a fundamental misunderstanding about how the stock market functions.  Wilczynski's belief about short-sellers simply indicates that he (a "long-seller") believed the stock was undervalued, not that he did not rely on Dendreon's misrepresentations.  Investors who sell short (i.e., sell assets such as securities with the intention of buying them back at a later date) realize their profit only if there is a decline in the value of the asset in the interim; in other words, if the assets were over-valued.  Investors "going long," like Wilczynski, do so in the belief that the stock is undervalued by the market and that they will profit when the price of the security goes up.

The price per share reflects all the publicly available information and the beliefs of both investors like Wilczynski, who believe the stock is undervalued, and short-sellers, who believe the stock is overvalued.  Nothing about Wilczynski's beliefs renders him atypical or demonstrates that Dendreon has a defense of non-reliance.  If anything, Wilczynski's beliefs demonstrate that he relied heavily on Dendreon's alleged misrepresentations (which tended to drive the value of their stock upward) to combat the effect the short-sellers had on the price of the stock.

Dendreon's second argument also appears to relate to a defense of non-reliance. Dendreon argues that Wilczynski's belief that the market is "rigged" and Wilczynski's clarification of his interrogatory response show that he did not rely on the integrity of the stock market. These allegations do not demonstrate Wilczynski's non-reliance on the integrity of the market or the misrepresentations. Defendants' analysis of Wilczynski's beliefs ignores the Supreme Court's discussion about efficient markets and its comment that "it is hard to imagine that there ever is a buyer or seller who does not rely on market integrity. Who would knowingly roll the dice in a crooked crap game?" Basic Inc., 485 U.S. at 246. If Wilczynski truly believed the market was rigged such that short sellers could manipulate the market at their will, there was no reason for him to buy Dendreon stock. Wilczynski was, instead, relying on the market to act efficiently when he hoped that the FDA would approve Provenge. This is reflected in the very next sentence of his "rigged" post where he wrote the only way to defeat short-sellers is to "hold" the stock. His interrogatory response was explained in the context of his beliefs about short sellers, and Dendreon's analysis of those beliefs has been addressed in the preceding paragraph. The Court finds that Wilczynski relied on the integrity of the market in purchasing Dendreon stock, and that his beliefs about the way the stock market functions do not render him an atypical representative.

Dendreon's third argument relates to Wilczynski's message board posts indicating that he blamed the FDA for Dendreon's stock drop and his testimony that he believes that Provenge still should have been approved by the FDA. This argument appears to relate to Wilczynski's reliance on Dendreon's statements. Wilczynski believed the FDA should have approved the drug, and therefore its denial hurt the stock price of Dendreon, which is exactly what happened. Dendreon's alleged misstatements led Wilczynski to believe that the FDA would approve the drug. Nothing about the previous two statements is inconsistent. Furthermore, Dendreon mischaracterizes Wilczynski's statements. His belief that Provenge should still have been approved is based on the Advisory Committee recommending approval, which relates to

efficacy, not to manufacturing issues. Even if all of Wilczynski's message board posts reflected his beliefs, the posts do not disprove Wilczynski's reliance on the market and Dendreon's statements.

Dendreon has cited no case that supports its various arguments that Wilczynski did not rely on the integrity of the market or Dendreon's misstatements. Hanon does not support Dendreon's point because the plaintiff's lack of reliance there was based on his "extensive experience in prior securities litigation, his relationship with his lawyers, his practice of buying a minimal number of shares of stock in various companies, and his uneconomical purchase of only ten shares of stock." Hanon, 976 F.2d at 508. None of those situations are present here. See also State of Alaska v. Suburban Propane Gas Corp., 123 F.3d 1317, 1321 (9th Cir. 1997) (finding plaintiff atypical because its bargaining power provided it opportunities to avoid injury). This Court finds that Mr. Wilczynski's claims are typical of the subclass as a whole.

**2. Adequacy**

Dendreon's next argument is that Wilczynski is not adequate because he is unfamiliar with the case. The Ninth Circuit has held that an "adequate representative must have the capacity to vigorously and conscientiously prosecute a derivative suit and to be free from economic interests that are antagonistic to the interests of the class." Larson v. Dumke, 900 F.2d 1363, 1367 (9th Cir. 1990). One of the factors to be considered in determining adequacy is "the plaintiff's unfamiliarity with the litigation and unwillingness to learn about the suit." Id. (quotation marks and citation omitted).

Dendreon argues that Wilczynski is not adequate because he: (1) had not seen the third amended complaint prior to a deposition (Dkt. No. 152-1 at 24); (2) did not know the judge's last name (Id. at 43); (3) did not know if the case was in federal or state court (Id.); (4) did not know what a subclass was (Id. at 27); (5) did not know what a class period was (Id. at 22); (6) failed to produce some documents in response to an interrogatory (Id. at 7-8); (7) only spent 12 to 15

1  hours on the case (Id. at 55); and (8) did not understand the attorney's fee arrangement (Id. at

2  25). None of these facts demonstrate that Wilczynski is an inadequate subclass representative.

3        The Supreme Court has held that dismissal of a class action was not warranted even when

4  the plaintiff showed that "she did not understand the complaint at all, that she could not explain

5  the statements made in the complaint, that she had a very small degree of knowledge as to what

6  the lawsuit was about, that she did not know any of the defendants by name, that she did not

7  know the nature of their alleged misconduct." Surowitz v. Hilton Hotels Corp., 383 U.S. 363,

8  366 (1966). The Court noted that the logic of the lower court opinion would mean that a person

9  "who is uneducated generally and illiterate in economic matters, could never under any

10 circumstances be a plaintiff in a [] suit brought in the federal courts to protect her stock

11 interests." Id. at 372.

12       This Court has held before that a plaintiff, in a pension plan class action, who did not

13 know she was a participant in the plan, did not know she had received a distribution from the

14 plan, thought she was entitled to a notice of change from a different plan, and was unsure of what

15 remedies she wanted, was an adequate plaintiff. Buus v. WaMu Pension Plan, 251 F.R.D. 578,

16 587 (W.D. Wash. 2008). This Court noted the several "extraordinary circumstances" where a

17 plaintiff was particularly inadequate, mostly involving plaintiffs who appeared to be buying

18 lawsuits. Id. None of the extraordinary circumstances appear here. If anything, Wilczynski has

19 demonstrated that he has a good understanding of the lawsuit and his role as a subclass

20 representative. He has read the original, first amended, and second amended complaint, he

21 understands he has a fiduciary duty to represent the class, he has gathered documents in response

22 to interrogatories, and is willing to spend as much time as is necessary to see the litigation

23 through. (Dkt. No. 157-1 at 8, 38-40, 42-43, 53-54, 79-80, 115.) Dendreon's counsel also fails

24

25

26

ORDER ON MOTION FOR CLASS CERTIFICATION- 10                                 CASE NO. C07-800

to recognize that Wilczynski's response during questioning about attorney's fees was a joke.[1] (Dkt. No. 152-1 at 25.)  This Court finds that Wilczynski is an adequate subclass representative.

A finding that Wilczynski is an adequate subclass representative comports with the decisions of other courts.  In Moeller v. Taco Bell Corp., the district court noted that the "threshold of knowledge required to qualify a class representative is low; a party must be familiar with the basic elements of her claim, and will be deemed inadequate only if she is startlingly unfamiliar with the case."  220 F.R.D. 604, 611 (N.D. Cal. 2004) (quotation marks and citations omitted).  The district court further noted that "[i]t is not necessary that a representative be intimately familiar with every factual and legal issue in the case; rather, it is enough that the representative understand the gravamen of the claim."  Id. (quotation marks omitted).  The plaintiffs in Moeller did not know the relevant legal standards at issue in the case. Id.  Here, while Wilczynski may not know the judge's last name or the legal terms of art, he does know that Dendreon made misrepresentations, members of the class bought shares in reliance on that misrepresentation, and members of the class lost money when the misrepresentation was revealed.

In Gammon v. GC Services Ltd. Partnership, the plaintiff incorrectly stated that he had never been a plaintiff in a lawsuit before, could not remember if he had reviewed the complaint, could not respond appropriately to a question relating to whether he had participated in discovery, incorrectly believed that his legal fees were paid for, did not know how much damages class members would receive, and misunderstood his role as a class representative.  162 F.R.D. 313, 318-319 (N.D. Ill. 1995).  Despite this, the plaintiff was found to be adequate based

---

[1] In response to a question if he knew "what percentage of damages your attorneys would get if there were damages awarded?", Wilczynski responded:
  A. No, I don't.  Most of it.
  Q. The attorneys would get most of it?
  A. Right.
  Q. Are you winking at me, Mr. Wilczynski?
(Dkt. No. 152-1 at 25.)

on the Supreme Court's holding in Surowitz. Here, assuming all of Dendreon's arguments are true, Wilczynski is in a similar position – he had not reviewed the third amended complaint, he did not respond properly to an interrogatory, he did not know what legal fee arrangements were made, and misunderstood what a subclass was. None of these things are any worse than what the plaintiff did not know in Gammon.

All the cases Dendreon cites are inapplicable in this context. Wilczynski actually demonstrates a good amount of knowledge regarding the litigation and has reviewed numerous documents and spent 12 to 15 hours on the case. Wilczynski also consulted with his attorneys, did know he was a subclass representative, and demonstrated a solid grasp of the basics of the case. His situation is nothing like the extremes detailed in the cases Dendreon cites. See also Buus, 251 F.R.D. at 587 (addressing Welling v. Alexy, 155 F.R.D. 654 (N.D. Cal. 1994) and In re Quarterdeck Office Systems, Inc. Securities Litigation, 1993 WL 623310 (C.D. Cal. 1993)). Both Griffin v. GK Intelligent Sys, Inc., 196 F.R.D. 298, 302 (S.D. Tex. 2000) and Kelley v. Mid-Am. Racing Stables, Inc., 139 F.R.D. 405, 409 (W.D. Okla. 1990) are inapposite because they relate to plaintiffs who have completely abdicated their roles to attorneys and were sought out specifically for the litigation. Here, Wilczynski sought the attorneys out, not the other way around, has reviewed many of the documents, has consulted with the attorneys regarding his interrogatories, has produced documents in response to requests, and has spent more than a minimal amount of time supervising the litigation. He is not merely lending his name to the litigation. Wilczynski is an adequate subclass representative.

The subclass is certified with Wilczynski as the subclass representative.

### D.   In-and-out Traders

Dendreon's other argument is that in-and-out traders should be excluded from the class. In-and-out traders are investors who bought their shares during the class period but sold their shares before the misrepresentation was revealed. The Supreme Court, reviewing a motion to dismiss, rejected the Ninth Circuit's position that such a plaintiff in a securities fraud suit can

establish "loss causation" by alleging inflated purchase price due to misrepresentation. <u>Dura Pharmaceuticals, Inc. v. Broudo</u>, 544 U.S. 336, 338 (2005). The Court held that "at the moment the transaction takes place, the plaintiff has suffered no loss; the inflated purchase payment is offset by ownership of a share that at that instant possesses equivalent value." <u>Id.</u> at 342. Furthermore, "[w]hen the purchaser subsequently resells such shares, even at a lower price, that lower price may reflect, not the earlier misrepresentation, but changed economic circumstances, changed investor expectations, new industry-specific or firm-specific facts, conditions, or other events, which taken separately or together account for some or all of that lower price." <u>Id.</u> at 342-43. The Court in <u>Dura</u> was faced with motion to dismiss and was evaluating the adequacy of the plaintiff's complaint.

Ninth Circuit precedent has long held that in-and-out traders are appropriately included in a class. <u>See</u> <u>Wool v. Tandem Computers Inc.</u>, 818 F.2d 1433, 1437 (9th Cir. 1987), <u>overruled on other grounds by</u> <u>Hollinger v. Titan Capital Corp.</u>, 914 F.2d 1564, 1575 (9th Cir. 1990). The Ninth Circuit adopted the out-of-pocket rule which fixes damages as "the difference between the purchase price and the value of the stock at the date of purchase." The <u>Wool</u> court indicated that "[b]ecause market forces are independent of corrective disclosures, an in-and-out trader, . . ., may suffer recoverable damages under the out-of-pocket rule even in the absence of corrective disclosures." <u>Id.</u> It is unclear whether <u>Dura</u>'s discussion of inflated purchase price as it relates to loss causation overturns the Ninth Circuit's rule in <u>Wool</u>. Courts deciding whether in-and-out traders should be included in classes have struggled with the question.

Post <u>Dura,</u> the Ninth Circuit has spoken on the question of loss causation but not as it relates to in-and-out traders. In <u>Metzler Investment GMBH v. Corinthian Colleges, Inc.</u>, the Ninth Circuit held that a "plaintiff does not, of course, need to <u>prove</u> loss causation in order to avoid dismissal; but the plaintiff must properly allege it." 540 F.3d 1049, 1062 (9th Cir. 2008). The Ninth Circuit, however, was addressing a motion to dismiss and not a motion for class certification. <u>Id.</u>

      The only circuit to address in-and-out traders post-<u>Dura</u> at the class certification phase is the Second Circuit. In <u>In re Flag Telecom Holdings, Ltd. Securities Litig.</u>, the Second Circuit declined to include in-and-out traders in a class action on a motion for class certification. 574 F.3d 29, 37-41 (2d Cir. 2009). The Second Circuit concluded that in light of <u>Dura</u>, because plaintiffs could not produce "sufficient evidence to demonstrate that the in-and-out traders will even 'conceivably' be able to prove loss causation as a matter of law" they could not proceed in the class. <u>Id.</u> at 40. The Second Circuit further indicated that the proper standard of proof was a preponderance of the evidence and not conceivability. <u>Id.</u> at 39.

      District courts in the Ninth Circuit have been in conflict with each other over whether in-and-out traders are appropriately included. In <u>In re Juniper Networks, Inc., Securities Litig.</u>, the court did not include in-and-out traders because, based on <u>Dura</u>, the plaintiffs could not "logically prove economic loss based on Juniper's alleged misrepresentations." No. C 06-04327 JW, 2009 WL 3353321 (N.D. Cal Oct. 16, 2009). However, in <u>In re Cooper Companies Inc. Securities Litig.</u>, the district court certified the class with in-and-out traders and rejected the loss causation argument because it was "misplaced at the class certification stage." 254 F.R.D. 628, 641 (C.D. Cal. 2009). The court indicated that such an argument was more appropriate at the summary judgment phase. <u>Id.</u> In <u>In re Connetics Corp. Securities Litig.</u>, in a challenge to predominance the district court indicated that plaintiffs are not required to "prove loss causation at class certification." 257 F.R.D. 572, 578-79 (N.D. Cal. 2009); <u>see also</u> <u>In re LDK Solar Securities Litig.</u>, 255 F.R.D. 519, 530-31 (N.D. Cal. 2009).

      Other district courts in other circuits dealing with the inclusion of in-and-out traders post <u>Dura</u> have held that they are appropriately included in a class. In <u>Silversman v. Motorola, Inc.</u>, the district court "included 'in-and-out' traders in the proposed class yet limited class membership to those who suffered damage as a result of their purchase of [] stock during the Class Period." 259 F.R.D. 163, 171 (N.D. Ill. 2009). The district court noted that the loss causation argument could be renewed again at summary judgment. <u>Id.</u> The district court in <u>In re</u>

1  Fed. Nat'l Mortgage Asso'n Securities, Derivative, and "ERISA" Litig., held that excluding in-
2  and-out traders at the class-certification stage was inappropriate "with discovery still pending"
3  because discovery might confirm a leakage theory. 247 F.R.D. 32, 41 (D. D.C. 2008). Another
4  district court did not exclude in-and-out traders because the loss argument was a "damages
5  issues" and did not "pose a problem to the proposed class definition." Ross v. Abercrombie &
6  Fitch Co., 257 F.R.D. 435, 456 (S.D. Ohio 2009).

Plaintiff's alleged loss as follows:

> Defendants' course of conduct operated as a fraud on purchasers of Dendreon's common stock, deceived the investing public regarding the likelihood and timing of FDA approval of Provenge, artificially inflated the price of Dendreon's common stock, caused plaintiffs and the other members of the Class to purchase Dendreon's publicly traded securities at artificially inflated prices, and <u>caused plaintiffs and members of the Class loss when both the fact and consequence of the concealed information was made public.</u>

(Dkt. No. 118 at 31) (emphasis added). In the claims for relief, the only damages plead is that investors purchased Dendreon stock at an inflated purchase price and would not have purchased the stock at all if they had been aware of the fraud. (Id. at 36, 37-38, 38-39.)

This Court finds that in-and-out traders are appropriately included in the class at the class certification stage. The critical issue is what level of proof is required for loss causation at the class certification stage. This Court finds that Dura only relates to how loss causation needs to be pled in the complaint. Dura does not affect the class definition at the class certification stage. The Second Circuit's reasoning places too great of a burden on the plaintiffs at the class certification stage by forcing them to prove by a "preponderance of the evidence" that they suffered a loss before discovery has even taken place. Given the Ninth Circuit's on-point Wool decision and its recent decision in Dukes rejecting the "significant proof" standard, this Court will allow in-and-out traders to remain in the class. In-and-out traders could prove that they suffered a loss when they sold their shares because they only purchased the stock due to the misrepresentation.

As the plaintiffs and the Eastern District of Pennsylvania noted:

> Due to the procedural posture of the case- *i.e.,* a Rule 12(b)(6) motion- *Dura Pharmaceuticals* was focused merely on the sufficiency of the plaintiff's initial pleadings, and does not address methodologies for quantifying economic loss. The parties' extensive briefing in the Supreme Court included specific discussion of Judge Sneed's out-of-pocket approach to damages . . . . However the Supreme Court did not even mention that topic in the *Dura Pharmaceuticals* opinion. It is difficult to conclude that *Dura Pharmaceuticals* stands for an endorsement of any particular economic loss/damage principles of law.

In re Cigna Corp. Securities Litig., 459 F. Supp. 2d 338, 353-54 (E.D. Pa. 2006). However difficult it might be for in-and-out traders to prove damages, Plaintiffs should be allowed discovery for the development of whatever evidence they might need. The Supreme Court's limiting statement that it "need not, and d[id] not, consider other proximate cause or loss-related questions" shows that it probably did intend to foreclose the out-of-pocket damages measure discussed in Wool. Dura Pharmaceuticals Inc., 544 U.S. at 346. Based on Dura's applicability only to the motion to dismiss phase, this Court includes the in-and-out traders in the class definition. This holding does not preclude defendants from challenging loss causation or damages at the summary judgment phase after discovery has been conducted.

**III.   CONCLUSION**

Plaintiffs' motion is hereby GRANTED. A class will be certified as described above. This Court finds that Mr. Wilczynski is a typical and adequate subclass representative and appoints him as such.

Dated this _27th_ day of May, 2010.

Marsha J. Pechman
United States District Judge